*273 OPINION OF THE COURT
Hancock, Jr., J.
This action arises from defendant McKesson’s sale of the stock of its wholly owned subsidiary, C.F. Mueller Corporation, a leading producer of pasta, to plaintiff CPC International. Plaintiff has sued McKesson Corporation,[1] Morgan Stanley, McKesson’s investment advisor, and individual defendants Blattman, Merrick and Brounstein, former Mueller and McKesson employees, on a complaint containing causes of action for damages based on breach of warranty, violations of the Martin Act (General Business Law § 352-c), violations of section 17 (a) of the Securities Act of 1933 (15 USC § 77q), and common-law fraud. Supreme Court granted defendants’ motion to dismiss the cause of action based on section 17 (a) of the Securities Act and granted the motions of Morgan Stanley and the individual defendants to dismiss the common-law fraud action as to them. It denied defendants’ motion to dismiss the Martin Act claim and denied the motions of Blattman and Merrick, residents of California and Connecticut, respectively, to dismiss the complaint against them upon the ground that the court lacked personal jurisdiction.
The Appellate Division modified and granted the motions to dismiss in their entirety with the exception of the causes of action alleging breach of warranty and common-law fraud against McKesson. The Appellate Division added that it agreed with Supreme Court’s denial of Blattman’s and Merrick’s motions to dismiss for lack of personal jurisdiction.
This appeal presents four questions: (1) whether plaintiff has a cause of action for violations of section 352-c of the Martin Act; (2) whether plaintiff has a cause of action for *274 violations of section 17 (a) of the Securities Act of 1933; (3) whether plaintiff has stated a cause of action against Morgan Stanley and the individual defendants based on common-law fraud; and (4) whether Supreme Court has personal jurisdiction over defendants Blattman and Merrick for this action.
The Complaint
The crux of plaintiff’s complaint is that the defendants deliberately and fraudulently prepared false projections of revenues, operating expenses and profits of Mueller and intentionally withheld other accurate projections for the purpose of selling Mueller for more than it was worth. Plaintiff alleges that, as part of a review of Mueller’s expected economic performance in early June 1983, Mueller’s executives made a presentation to McKesson’s executives predicting a sharp decline in Mueller’s profitability; that following this prediction the individual defendants and others attended a conference on June 27 and 28, 1983 at the New York offices of Morgan Stanley to formulate a program for the sale of Mueller at an inflated price; that at McKesson’s and Blattman’s direction defendants Merrick and Brounstein, a Mueller vice-president, and others, from June 30, 1983 through July 1, 1983, created fictitious projections overstating Mueller’s business prospects which they knew were at odds with the unfavorable projections of future business prepared by Mueller’s executives approximately two weeks earlier; that Morgan Stanley knowingly incorporated such fictitious projections into a confidential addendum to a memorandum offering Mueller to interested buyers; that Morgan Stanley distributed the offering memorandum and the confidential addendum containing these overstated projections in soliciting bids from CPC and others for purchase of the Mueller stock; that although the offering memorandum prepared by Morgan Stanley contained a disclaimer of any express or implied warranties, it also contained the statement, "Morgan Stanley believe[s] that the financial and other information contained herein is accurate”; that the confidential addendum prepared by Morgan Stanley stated that the projections were "based on estimates of Mueller’s management, which in the opinion of management, are reasonable in light of historical results and present trends”; that the defendants concealed from plaintiff the facts that the projections incorporated in the confidential memorandum had been especially prepared for use by Morgan Stanley and *275 McKesson in selling the Mueller stock and that these projections were unwarranted and contrary to management’s earlier authentic projections; that plaintiff submitted its successful bid for the stock of Mueller in reliance on the projections distributed by Morgan Stanley which McKesson had warranted in the purchase and sale agreement to be authentic and to have been made in good faith in the ordinary course of business using the assumptions of market growth, market share and product share set forth in the contract; and that as a result, on December 1, 1983, CPC purchased Mueller for an amount $61,300,000 higher than its actual fair market value.
The Holdings
For reasons which will appear, the court holds in part I that there is no implied private cause of action for violations of the antifraud provisions of the Martin Act (General Business Law § 352-c); in part II that there is no implied private cause of action under section 17 (a) of the Securities Act of 1933 (15 USC § 77q); and in part III that plaintiff has sufficiently pleaded a cause of action for common-law fraud. Additionally, in part IV, we reject Blattman and Merrick’s argument that we should affirm the dismissal of the complaint as to them on the alternative ground that New York courts do not have personal jurisdiction. The order of the Appellate Division should be modified accordingly.[2]
I
General Business Law § 352-c prohibits various fraudulent and deceitful practices in the distribution, exchange, sale and purchase of securities.[3] This provision is part of the *276 Martin Act, New York’s version of the blue sky laws which, in various forms, have been enacted by every State in the country. In all the other States, except one, the Legislature has expressly recognized a private civil action for violations of the corresponding provision. Under the Martin Act, however, no private action has been expressly authorized. A majority of this court now holds that there is no cause of action impliedly created under section 352-c.
The rules for determining when a violation of a statutory provision gives rise to an implied private cause of action for damages have evolved in the decisional law of this State over more than 100 years. (See, e.g., Atkin v Hill, Darlington & Grimm, 12 NY2d 940; Pine Grove Poultry Farm v Newton ByProducts. Mfg. Co., 248 NY 293; Abounader v Strohmeyer & Arpe Co., 243 NY 458; and Willy v Mulledy, 78 NY 310; contrast with Carpenter v City of Plattsburgh, 66 NY2d 791; Stoganovic v Dinolfo, 61 NY2d 812; Drinkhouse v Parka Corp., 3 NY2d 82; Steitz v City of Beacon, 295 NY 51; see also, Restatement [Second] of Torts §§ 286, 874A, comments h, i.)
Recently, in Burns Jackson Miller Summit & Spitzer v Lindner (59 NY2d 314), we held that a violation of the Taylor Law did not give rise to an independent cause of action not expressly granted, because such would be inconsistent with that statute’s purpose, legislative history, and underlying scheme. We explained that: "Whether a private cause of action was intended will turn in the first instance on whether the plaintiff is 'one of the class for whose especial benefit the statute was enacted’ [citations omitted]. But the inquiry does not ** * * end there * * * Important also are what indications there are in the statute or its legislative history of an intent to create (or conversely to deny) such a remedy and, most importantly, the consistency of doing so with the purposes underlying the legislative scheme [citations omitted]” (supra, at 325). In short, a private cause of action is implied where it can be shown that plaintiff belongs to the class of legislatively intended beneficiaries and that a right of action would be "clearly in furtherance of the legislative purpose” (supra, at 329).
The majority of this court holds that an implied private *277 action is not consistent with the legislative scheme underlying the Martin Act and, specifically, section 352-c; that the specific purpose of the statute was to create a statutory mechanism in which the Attorney-General would have broad regulatory and remedial powers to prevent fraudulent securities practices by investigating and intervening at the first indication of possible securities fraud on the public and, thereafter, if appropriate, to commence civil or criminal prosecution; and that consistency of purpose with the statute includes consistency with this enforcement mechanism (see, General Business Law §§ 352, 353, 353-a, 354, 358; Kaufmann, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 23-A, at 19-20).
Judge Simons and I have a different view. We believe that the underlying purpose of section 352-c is not to grant various powers to the Attorney-General. Rather, as we see it, the ultimate aim to be achieved by the statute is the deterrence of fraudulent practices in the offering and sale of securities and the protection of investors damaged by such practices (see, People v Lexington Sixty-First Assocs., 38 NY2d 588, 595; Mem of Attorney-General in support of L 1955, ch 553, 1955 NY Legis, at 133; Report of Special Committee Appointed by Governor to Provide Proper Supervision and Regulation in Connection with Securities Offered to Public for Investment, 1920 NY Legis Doc No. 81). Accordingly, we would hold that an implied private cause of action furthers that broader statutory purpose and, therefore, comports with the rule stated in Burns Jackson (see, 2 Loss, Securities Regulation, at 941-942; 3 Loss, at 1631 [2d ed 1961]; Prosser and Keeton, Torts § 4, at 25 [5th ed]; Restatement [Second] of Torts §§ 286, 874A, comments h, i).
Inasmuch as the court does now decide that the particular purpose of section 352-c is the creation of an enforcement mechanism within which a private action is not implied, further elaboration of our respective positions on the application of settled rules to this specific statute is unnecessary.
Notwithstanding these differences, the court unanimously recognizes that there are reasons which suggest that the Legislature consider the merits of a statutorily expressed cause of action. By reducing the expectancy of reaping illicit profits from fraudulent securities practices, a private cause of action would act as a further deterrent (see, Fratt v Robinson, 203 F2d 627, 632 [9th Cir]; Mem of Attorney-General in *278 support of L 1955, ch 533, 1955 NY Legis Ann, at 133; Committee Bill Mem in support of L 1982, ch 146; 3 Loss, Securities Regulation, at 1631 [2d ed 1961]; see also, Comment, Action Under State Law: Florida’s Blue Sky and Common Law Alternatives to Rule 10b-5 for Relief in Securities Fraud, 32 U Fla L Rev 636, 640, n 32). A statutory cause of action in State court could add a remedy for defrauded investors in those cases where none exists in common-law fraud, and where the Federal courts have denied any relief under Federal law (see, e.g., Ernst & Ernst v Hochfelder, 425 US 185; Blue Chip Stamps v Manor Drug Stores, 421 US 723; In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F2d 1349 [9th Cir]; Landry v All Am. Assur. Co., 688 F2d 381; see also, Comment, Proof of Fault in Actions for Securities Fraud: A Cloud in Pennsylvania’s Blue Sky, 46 U Pitt L Rev 1083; Cherner, Considering the State Court as a Forum for Securities Actions, 9 Cumb L Rev 663). Moreover, a statutory cause of action would be consistent with the blue sky laws of the other States which, except for Rhode Island, all expressly provide for some form of civil liability (see, 6 Loss, Securities Regulation, at 3814 [1969 Supp]; see also, 70 Pa Stat Annot § 1-101 et seq. [1972]).
II
To determine if plaintiff has a cause of action for alleged violations of section 17 (a) of the Securities Act of 1933 (15 USC § 77q),[4] we must first decide whether under Federal law a private cause of action exists. The statute itself does not expressly create one and, therefore, as with plaintiff’s Martin Act claim, if a private cause of action does exist, it must be implied.
In discussing whether section 17 (a) gives rise to a private *279 cause of action we note, at the outset, that the Supreme Court has not yet ruled on this question (see, Bateman Eichler, Hill Richards v Berner, 472 US 299, 304, n 9; Herman & MacLean v Huddleston, 459 US 375, 378, n 2; Teamsters v Daniel, 439 US 551, 557, n 9; Blue Chip Stamps v Manor Drug Stores, 421 US 723, 733-734, n 6, supra) and that the decisions of the lower Federal courts are divided.
Until the late 1970’s, the prevailing view was that a private cause of action existed. The Second, Fourth, Seventh, and Ninth Circuit Courts of Appeals so held (see, Stephenson v Calpine Conifers II, 652 F2d 808, 815 [9th Cir]; Lincoln Natl. Bank v Herber, 604 F2d 1038, 1040, n 2 [7th Cir]; Kirshner v United States, 603 F2d 234, 241 [2d Cir], cert denied sub nom. Goldberg v Kirshner, 444 US 995; Daniel v International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, 561 F2d 1223, 1244-1246 [7th Cir]; Newman v Prior, 518 F2d 97, 99 [4th Cir]). At the root of most of these decisions was the assumption that section 17 (a) was nearly identical to section 10 (b) of the Securities Exchange Act of 1934 (15 USC § 78j [b]). Based on that assumption, the courts concluded that since the Supreme Court had recognized the existence of an implied private cause of action under section 10 (b) (see, Blue Chip Stamps v Manor Drug Stores, 421 US 723, 730, supra; Superintendent of Ins. v Bankers Life & Cas. Co., 404 US 6, 13, n 9), "there seemed little practical point in denying the existence of [a private] action under § 17” (Securities & Exch. Commn. v Texas Gulf Sulphur Co., 401 F2d 833, 867 [Friendly, J., concurring]; see, e.g., Stephenson v Calpine Conifers II, supra, at 815; Kirshner v United States, supra, at 241; Daniel v International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, supra, at 1245-1246).
In view of recent decisions of the Supreme Court, many courts have now recognized that section 17 (a) and section 10 (b) are not nearly identical as previously assumed[5] and that, *280 therefore, the premise of the earlier cases — that if there is a private cause of action under section 10 (b) there must be a cause of action under section 17 (a) — has been vitiated (see, e.g, Landry v All Am. Assur. Co., 688 F2d 381, 384-385 [5th Cir], supra; Ackerman v Clinical Data [1985-1986 Transfer Binder] Fed Sec L Rep [CCH] If 92,207 [US Dist Ct Mass]; Kimmel v Peterson, 565 F Supp 476, 483-485 [ED Pa]; Mann v Oppenheimer & Co. [1986-1987 Transfer Binder] Fed Sec L Rep [CCH] j[ 93,005 [Del]). In addition, the Ninth Circuit recently overruled its prior decisions in Mosher v Kane (784 F2d 1385) and Stephenson v Calpine Conifers II (supra) and held that there is no private cause of action under section 17 (a) (see, In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F2d 1349, supra) and three other circuits have indicated that their prior decisions holding that there is a private cause of action are now open to reexamination (see, Teamsters Local 282 Pension Trust Fund v Angelos, 762 F2d 522, 530-531 [7th Cir]; Yoder v Orthomolecular Nutrition Inst., 751 F2d 555, 559, n 3 [2d Cir]; Securities & Exch. Commn. v American Realty Trust, 586 F2d 1001, 1006 [4th Cir]).
With this background, we turn to an analysis of section 17 (a), applying the four-part test established by the Supreme Court in Cort v Ash (422 US 66) to determine whether there is an implied cause of action under a Federal statute. The Cort v Ash four-part test follows: "First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,’ * * * that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? * * * Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? * * * And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?” (422 US 66, 78, supra.)
As to the first Cort v Ash inquiry — whether plaintiff is " 'one of the class for whose especial benefit the statute was enacted’ ” — we note that there is a split of authority even among those courts that hold there is no private cause of action (compare, Kimmel v Peterson, 565 F Supp 476, 486, supra; and Hill v Der, 521 F Supp 1370, 1376 [D Del]; with Landry v All Am. Assur. Co., 688 F2d 381, 389, supra; and Ackerman v Clinical Data, supra). We agree with the reason *281 ing of the courts which hold that section 17 (a) was intended to protect investors and that it did not "merely represents a general censure of fraudulent practices” (Landry v All Am. Assur. Co., supra, at 389). Indeed, we note that the Supreme Court, after reviewing the legislative history of the Securities Act of 1933, characterized its main purpose as " 'protecting] the investing public and honest business’ ” (United States v Naftalin, 441 US 768, 775, quoting S Rep No. 47, 73d Cong, 1st Sess 1 [1933]). Finally, any suggestion that Congress in enacting the Securities Act of 1933 and, thereby, establishing this intricate legislative mechanism for controlling the securities business, could have only intended to provide a means for censuring fraudulent practices — with no thought of providing sanctions or remedies — is dispelled by the express provisions for civil actions for violations in sections 11 and 12 of the Securities Act of 1933 (15 USC §§ 77k, 111).
A more difficult analytical problem is presented by the second Cort v Ash inquiry: whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one” under section 17 (a). The legislative history and the structure of the Securities Act of 1933, however, require us to conclude that Congress did not intend to do so.
We find the legislative history of section 17 (a) particularly persuasive. There are explicit indications that it was not intended to create a private cause of action. The House Committee report specified sections 11 and 12, but not section 17 (a), as the sections creating and defining the civil liabilities under the Securities Act (see, HR Rep No. 85, 73d Cong, 1st Sess 9-10; see also, Landry v All Am. Assur. Co., supra, at 389, n 34; Securities & Exch. Commn. v Texas Gulf Sulphur Co., 401 F2d 833, 867 [2d Cir, Friendly, J., concurring]). The report explained that the reason for limiting the civil remedies was that "[t]o impose greater responsibility * * * would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the public” (HR Rep No. 85, 73d Cong, 1st Sess 9-10; see, Citizens State Bank v Continental Assur. Co., 598 F Supp 1111, 1115 [WD Wis]). Additionally, Senator Fletcher and Commissioner Landis of the Federal Trade Commission, both of whom were deeply involved with the Securities Acts, stated unequivocally that section 17 (a) was not designed to create civil liability (see, 3 Loss, Securities Regulation, at 1784-1785 [2d ed 1961], quoting Landis, Liability Sections of Securities Acts, 18 Am Accoun *282 tant 330, 331 [1933] ["The suggestion has been made on occasion that civil liabilities arise also from a violation of Section 17 * * * But a reading of this section in the light of the entire Act leaves no doubt but that violations of its provisions give rise only to a liability to be restrained by injunctive action or if wilfully done, to a liability to be punished criminally.”]; Citizens State Bank v Continental Assur. Co., 598 F Supp 1111, 1115, supra, quoting 78 Cong Rec 8711-8712 [1934]; ["It is to be noted that enforcement of the provisions of the new subsection is left to injunction, stop order, and criminal prosecution. No civil liability attaches for any violation thereof’]).
Moreover, the structure of the Securities Act of 1933, when analyzed, confirms our conclusion that Congress did not intend to provide a private cause of action under section 17 (a). The Securities Act contains express civil remedies (see, §§ 11, 12 [15 USC §§ 77k, 77/]) and, from the inclusion of these remedies in specific sections, it can be logically inferred that if Congress had intended that there also should be a private cause of action under section 17 (a), it would have said so (see, Passenger Corp. v Passengers Assn., 414 US 453, 458; but see, Howing Co. v Nationwide Corp., 826 F2d 1470 [6th Cir]).
Plaintiff argues, however, that it follows from the Supreme Court’s decision in Herman & MacLean v Huddleston (459 US 375, supra) — holding that the availability of an express remedy under section 11 of the 1933 Act does not preclude defrauded purchasers of registered securities from maintaining an action under section 10 (b) of the 1934 Act — that the existence of express remedies in sections 11 and 12 should similarly not preclude a finding that Congress intended an implied civil remedy under section 17 (a). A review of Herman & MacLean v Huddleston (supra) and a comparison of section 17 (a) with sections 11 and 12 and with section 10 (b), leads us to the opposite conclusion.
In Herman & MacLean v Huddleston (supra, at 381-383), the Supreme Court noted that while section 10 (b) and section 11 have some overlap, they "address different types of wrongdoing” and "a § 10 (b) plaintiff carries a heavier burden than a § 11 plaintiff”. It concluded that since section 11 and section 10 (b) have different purposes and describe different substantive wrongs, it could not logically be inferred that by providing for express civil remedies in one section Congress must *283 have intended to exclude such remedies under the other section. This reason for not drawing the inference under the accepted canon of construction (see, e.g., McKinney’s Cons Laws of NY, Book 1, Statutes § 240 ["where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded”]) does not exist when comparing section 17 (a) with sections 11 and 12. Section 17 (a) and section 12 (2) address the same substantive wrongs. The chief differences between the two sections are procedural: section 17 (a) lacks certain procedural protections which are present in section 12 (2) (see, 3 Loss, Securities Regulation, at 1785 [2d ed 1961]; see, Hill v Der, 521 F Supp 1370, 1376-1377, supra; Mann v Oppenheimer & Co. [1986-1987 Transfer Binder] Fed Sec L Rep [CCH] [f 93,005, supra). It is unlikely that Congress would have created express causes of action with specific procedural requirements under sections 11 and 12 and, at the same time, have intended to imply, without procedural requirements, a cause of action under section 17 (a) covering the same conduct (see, Passenger Corp. v Passengers Assn., 414 US 453, 458, supra).
Plaintiff also argues that because Congress made an extensive overhaul of the securities laws in 1975 and left intact the rule from a nearly unanimous line of judicial decisions permitting plaintiffs to sue under section 17 (a), that by its silence, it approved the rule (see, Herman & MacLean v Huddleston, supra, at 384-386). Again, we disagree.
When Congress amended the securities laws in 1975 there were at least 11 recent cases precluding a cause of action under section 17 (a).[6] Indeed, in a 1975 opinion, while reserving decision on whether there is • a private cause of action *284 under section 17 (a), the Supreme Court noted this split of authority (see, Blue Chip Stamps v Manor Drug Stores, 421 US 723, 733-734, n 6, supra, citing, inter alia, 3 Loss, Securities Regulation, at 1785 [2d ed 1961]). Thus, because the question was clearly unresolved in 1975, it cannot be said that Congress’s failure to negate private causes of action when amending the securities law should be taken as its acceptance of the decisions permitting them (cf., Howing Co. v Nationwide Corp., supra). In sum, from express statements in the legislative history and from the structure of the statute, we find both explicit and implicit indications that Congress intended not to imply a private cause of action under section 17 (a).
Likewise, the third Cort v Ash factor — whether implying a private cause of action would be consistent with the underlying purposes of the legislative scheme — suggests that no cause of action was intended. Because Congress has explicitly given express civil remedies in Other parts of the statute with precise procedural requirements and safeguards, it would be anomalous to find that Congress intended, at the same time, to grant a civil remedy under section 17 (a) which has no such procedural protections, thereby encouraging plaintiffs to bypass the other sections (see, Landry v All Am. Assur. Co., supra, at 390).
Finally, under the fourth Cort v Ash factor, a private cause of action will not be implied under a Federal statute for matters traditionally relegated solely to State courts. Although this prohibition clearly does not apply to matters within the scope of section 17 (a), application of the second and third factors is, nevertheless, sufficient to compel the result reached here (see, In re Washington Pub. Power Supply Sys. Sec. Litig., supra).
Since we agree with the Appellate Division that there is no cognizable civil cause of action under section 17 (a), questions pertaining to whether the actions alleged constitute a violation of that statute need not be addressed.
Ill
We now turn to plaintiff’s claim for common-law fraud against Morgan Stanley and the individual defendants. Applying the rule that on a motion to dismiss (CPLR 3211 [a] [7]), "the allegations of a complaint, supplemented by a plaintiffs additional submissions, if any, must be given their most favorable intendment” (Arrington v New York Times Co., 55 *285 NY2d 433, 442; see, Jered Constr. Corp. v New York City Tr. Auth., 22 NY2d 187, 194 ["It is almost impossible to state in detail the circumstances constituting a fraud where those circumstances are peculiarly within the knowledge of the party against whom the (fraud) is being asserted”]; see also, Rovello v Orofino Realty Co., 40 NY2d 633, 636), we conclude that a valid cause of action for common-law fraud is stated.
In order to state a cause of action for common-law fraud, it is sufficient for plaintiff to allege that "defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged” (Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403, 406-407).
Concededly, the complaint alleges that Morgan Stanley and the individual defendants knowingly participated in the preparation and distribution of projections which materially misrepresented Mueller’s financial condition. The dispute centers on (1) whether plaintiff reasonably relied on these projections or whether, on the other hand, plaintiff relied solely on the contractual warranties made by McKesson in the purchase and sale agreement, and (2) if plaintiff relied only on the contractual warranties given by McKesson, whether that fact absolves the other defendants from liability. Morgan Stanley and the individual defendants argue, and the lower courts agree, that the complaint and the evidentiary submissions show that plaintiff, in contracting to purchase Mueller, relied solely on the warranties, and that the contractual warranties were not contemplated at the time of Morgan Stanley’s and the individual defendants’ participation in the preparation and distribution of the false financial projections. Thus, the Appellate Division determined that these defendants, "like other agents, can be held liable for aiding and abetting their principal in the commission of a fraud, but not when the fraud committed is different from the one they may have believed they were participating in” (120 AD2d 221, 230). We disagree.
The complaint includes allegations that the defendants knowingly engaged in a scheme to provide "substantial assistance” to McKesson in presenting an "enhanced financial picture” of Mueller in order to "raise the price that McKesson would ultimately receive for the Mueller stock”; that in furtherance of this scheme, Morgan Stanley and the individual defendants prepared and distributed a set of false and *286 fictitious financial projections to plaintiff and others; that these projections, while including a disclaimer of warranties, also stated that "Morgan Stanley believe[s] that the financial and other information contained herein is accurate” and that the projections were "based on estimates of Mueller’s management, which in the opinion of management, are reasonable in light of historical results and present trends”, and that these financial projections became the subject of contractual warranties in the purchase and sale agreement.
Given its "most favorable intendment”, the complaint, read as a whole, describes a scheme — involving all the defendants — devised and executed for the specific purpose of defrauding the prospective purchaser by selling it the Mueller stock for more than it was worth. Whether the giving of the contractual warranties was part of this scheme, as plaintiff claims, is a factual question which cannot be determined at the pleading stage. Moreover, even if the warranties were not contemplated as part of the original fraudulent scheme, but given solely as a result of McKesson’s unilateral decision, Morgan Stanley and the individual defendants, as parties to the underlying fraudulent conspiracy, could, nonetheless, be liable for McKesson’s independent actions done in furtherance of it (see, Dewey v Moyer, 72 NY 70, 80).
Finally, we reject the contention that the financial projections were mere opinions which could not be the basis for common-law fraud (120 AD2d 221, 230, supra). Plaintiff alleges that defendants made the projections knowing that they were false and unreasonable and that they were not based on Mueller’s actual financial condition. Thus, as alleged in the complaint, the projections of Mueller’s expected financial performance constitute "material existing fact[s], sufficient to support a fraud action” (see, Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403, 407, supra; Cristallina S. A. v Christie, Manson & Woods Intl., 117 AD2d 284, 294-295; Chase Manhattan Bank v Perla, 65 AD2d 207, 210-211; see also, Prosser and Keeton, Torts § 109 [5th ed 1984]).
IV
We find no merit in the argument of defendants Blattman and Merrick that their motions to dismiss for lack of personal jurisdiction (CPLR 3211 [a] [8]) should have been granted. In the complaint, defendants Blattman and Merrick are charged with tortious actions which, if established, would *287 constitute common-law fraud. Some of the acts giving rise to these causes of action took place at the offices of defendant Morgan Stanley in New York City. Because the lawsuit against defendants is based on the tortious acts they allegedly committed within the State, personal jurisdiction was acquired over them under CPLR 302 (a) (2) by service of process outside the State (see, Kramer v Vogl, 17 NY2d 27, 31; 1 Weinstein-Korn-Miller, NY Civ Prac If 302.13, at 3-142.7 — 3-142.8). It is unnecessary to decide whether personal jurisdiction was also acquired under CPLR 302 (a) (1).
We reject defendants’ contentions that, because all the acts within the State were committed while they were on the business of their respective employers, the acts did not subject them to personal jurisdiction under the "fiduciary shield doctrine”. This doctrine, which has been applied as an equitable rule in some Federal courts (see, e.g., CutCo Indus. v Naughton, 806 F2d 361 [2d Cir]; Marine Midland Bank v Miller, 664 F2d 899 [2d Cir]; Wilshire Oil Co. v Riffe, 409 F2d 1277 [10th Cir]; Koenig, Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield, 38 Stan L Rev 813, 819-828) and by some of our appellate divisions (see, Kreutter v McFadden Oil Corp., 122 AD2d 614 [4th Dept], lv granted 69 NY2d 606; Sheldon v Kimberly-Clark Corp., 105 AD2d 273 [2d Dept]; but see, Hasbro Bradley v Coopers & Lybrand, 121 AD2d 870, 871 [1st Dept]; and Laurenzano v Goldman, 96 AD2d 852, 853 [2d Dept] [both rejecting application of the rule]) has the effect of insulating an individual defendant from personal jurisdiction when the actions on which jurisdiction is based are solely for the benefit of his corporate employer. The rule, however, has been rejected by the Supreme Court as a basis for attacking the constitutional validity of properly acquired long-arm jurisdiction (see, Colder v Jones, 465 US 783; Keeton v Hustler Mag., 465 US 770; Koenig, op. cit, at 821-823), and has met with some disfavor (see, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C302:3, at 44, 1987 Cum Ann Pocket Part).
This court has not adopted the fiduciary shield doctrine as the law in this State. We note that when the doctrine is applied, it is on the basis of the particular facts of the case and in consideration of the equities (see, Marine Midland Bank v Miller, supra, at 902-903). Whether we would find the rule applicable in other circumstances we do not now decide. Suffice to say, we find it inapplicable, where, as here, there is *288 jurisdiction over defendants under CPLR 302 (a) (2). We are aware of no decision applying the rule when long-arm jurisdiction over a defendant is predicated on a statute permitting jurisdiction on the basis of a tortious act committed within the State (see, Koenig, op. cit., at 823-828), and we observe that the equitable considerations underlying the doctrine (see, Marine Midland Bank v Miller, supra, at 902, 903) would not favor its application in such case.
The order of the Appellate Division should be modified, with costs, in accordance herewith, and, as modified, affirmed.
Order insofar as appealed from modified, with costs to plaintiff, by reinstating the cause of action for common-law fraud as against defendant Morgan Stanley & Co., Incorporated and the individual defendants, and, as so modified, affirmed. Opinion by Judge Hancock, Jr. Chief Judge Wachtler and Judges Simons, Alexander, Titone and Bellacosa concur; Judges Simons and Hancock, Jr., dissenting in part and voting to further modify by reinstating the cause of action alleging violations of section 352-c of the Martin Act for reasons incorporated in part "I” of the opinion; Judge Kaye taking no part.

. Plaintiff has also sued McKesson’s wholly owned subsidiary Corporation of America which held the Mueller stock and was, along with McKesson Corporation, one of the selling parties. For the purpose of this opinion the name McKesson will be used to refer to both McKesson Corporation and Corporation of America.

. The order appealed from is final as to Morgan Stanley and the individual defendants since the action was finally determined as to them, and because they are separate and distinct entities from McKesson (see, We’re Assocs. Co. v Cohen Stracher & Bloom, 65 NY2d 148, 149). Therefore, only Morgan Stanley and the individual defendants are respondents before us on this appeal.

. Section 352-c (1), in pertinent part, prohibits and makes it illegal for any persons, agent, or employee to engage in
"(a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;
"(b) Any promise or representation as to the future which is beyond reasonablé expectation or unwarranted by existing circumstances;
"(c) Any representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with *276 reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made; * * * to induce or promote the * * * sale * * * of any security]”.

. Section 17 (a) of the Securities Act of 1933 provides:
"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
"(1) to employ any device, scheme, or artifice to defraud, or "(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.”

. In Ernst & Ernst v Hochfelder (425 US 185, 201) the Supreme Court held there is a scienter requirement for a 10 (b) cause of action. In Aaron v SEC (446 US 680) the Supreme Court held that in a SEC injunctive suit, there is a scienter requirement under rule 10b-5 (17 CFR 240.10b-5) but that there is no scienter requirement under section 17 (a) (2) or (3). In Blue Chip Stamps v Manor Drug Stores (421 US 723) the Supreme Court held that only purchasers or sellers have standing under 10 (b). In contrast section 17 (a) covers both the "offer” and "sale” of securities (see, Ackerman v Clinical Data [1985-1986 Transer Binder] Fed Sec L Rep [CCH] [J 92,207 [US Dist Ct Mass]; Kimmel v Peterson, 565 F Supp 476, 484 [ED Pa]).

. See, Greater Iowa Corp. v McLendon, 378 F2d 783 (8th Cir) (interpreted as holding no private § 17 [a] action exists in Shull v Dain, Kalman & Quail, 561 F2d 152, 155 [8th Cir], cert denied 434 US 1086; Architectural League v Bartos, 404 F Supp 304, 313 [SD NY]; Welch Foods v Goldman, Sachs & Co., 398 F Supp 1393, 1399-1401 [SD NY]; Reid v Mann, 381 F Supp 525, 526-528 [ND 111]; Ferland v Orange Groves, 377 F Supp 690, 706-707 [MD Fla]; Cowsar v Regional Recreations, 65 FRD 394, 398 [MD La]; Hardy v Sanson, 356 F Supp 1034, 1038 [ND Ga]; Dyer v Eastern Trust & Banking Co., 336 F Supp 890, 903-905 [D Me]; Emmi v First-Manufacturers Natl. Bank, 336 F Supp 629, 635 [D Me]; Trussell v United Underwriters, 228 F Supp 757, 766-769 [D Colo]; see also, Gilbert v Nixon, 429 F2d 348, 353, n 4 [10th Cir] [noting the District Court’s ruling that there was no cause of action under § 17 (a) was not appealed]).