■ STEPHEN RUBENSTEIN et al., Plaintiffs, v EAST RIVER TENANTS CORPORATION, Appellant, and M R EAST END ASSOCIATES LIMITED PARTNERSHIP et al., Respondents.—Judgment and order (one paper) of the Supreme Court, New York County (William P. McCooe, J.), entered June 12, 1987, which granted summary judgment to defendants-respondents M R

East End Associates Limited Partnership, Martin J. Raynes, Edward J. Minskoff, 200 East End Associates, Bramalea Limited and M. J. Raynes, Incorporated, dismissing the cross claims of defendant-appellant East River Tenants Corporation, is unanimously modified, on the law, to reinstate the first, second and fifth cross claims, and otherwise affirmed, without costs or disbursements.

The building located at 200 East End Avenue, containing 16 stories and 188 residential apartments, was converted to cooperative ownership in February 1983, after a 1½-year process, by defendants-respondents M R East End Associates Limited Partnership, Martin J. Raynes, Edward J. Minskoff, 200 East End Associates, Bramalea Limited and M. J. Raynes, Incorporated (hereinafter collectively referred to as Sponsor). Three years later plaintiffs, who are tenants-shareholders, brought this action against both defendant East River Tenants Corporation (the Cooperative Corporation) and the Sponsor, alleging severe water leakage and damages in the apartment they had purchased.

East River's answer asserted cross claims against the Sponsor, enlarging the scope of the action to allege responsibility for water seepage damage and repairs for the entire building, with claimed damages "in excess of $5 million". The first cross claim was for breach of contract, alleging that the Sponsor failed to fulfill promises in the offering plan to identify and correct conditions causing the water leaks. The second cross claim was also for breach of contract, to make repairs to individual apartments based upon a separate portion of the offering plan, paragraph 14 (h) of the fifth amendment.

The third cross claim was for misrepresentation and fraud. It alleges that the Sponsor, both in the offering plan and orally, made statements that it would correct the water seepage problems, to induce tenants and others to accept the Sponsor's offer to purchase, when the Sponsor never intended to spend the money to do the extensive work necessary to correct the serious problem. The fourth cross claim alleges a violation of section 352-c of the General Business Law (the Martin Act). The fifth cross claim was for indemnification *or* contribution from the Sponsor in the event the plaintiffs recovered a judgment against the Cooperative Corporation.

The Supreme Court granted the Sponsor's summary judgment dismissal motion. The court found that the Cooperative Corporation was barred, as a matter of law, from asserting any contractual claims on the basis that the property was

conveyed on an "as is" basis, the tenants being fully aware of the water seepage problem and, indeed, using it as a negotiating point. The only exception to the "as is" disclaimer was found to be the Sponsor's express agreement to perform enumerated work orders and specific repairs requested by tenants prior to closing, pursuant to paragraph 13 of the fifth amendment to the offering plan.

As to the second cross claim to enforce contract claims held by individual tenants as a result of the Sponsor not performing work it had specifically undertaken to do under the agreement, the court found the Cooperative Corporation was not in privity with the Sponsor as to that provision and had no right to enforce such claims of nonperformance.

The third cross claim for fraud was dismissed on the dual basis that tenants' full awareness of the water seepage problem precluded reliance and that there could be no fraud claim where the fraud related only to an alleged breach of contract.

The fourth cross claim was dismissed on the ground there is no private right of action under the Martin Act *(CPC Intl. v McKesson Corp.,* 70 NY2d 268).

The fifth cross claim for indemnification or contribution was then dismissed since no legal or factual basis was shown to justify such a claim.

Specifically excluded from the exchange agreement section 8 "as is" provision, relied upon by the nisi prius court, were the covenants and representations made by the Sponsor in the exchange agreement and offering plan. Thus, the exchange agreement, in section 13, states it is subject to the Sponsor's obligations and representations set forth in the offering plan and that it is not intended to lessen the Sponsor's obligations under the offering plan. It reads in pertinent part: "In the case of conflict between the terms and provisions of this Agreement and those of the Plan, the terms and provisions of the Plan shall prevail to the extent that they enlarge upon, deal in greater length with, *or impose greater obligations on the Sponsor."* (Emphasis added.)

The Supreme Court, therefore, erred when it found that the enumeration of work orders in the fifth amendment to the offering plan unambiguously limited the Sponsor's obligation to identify and correct the water seepage problem as recommended in the incorporated report of its own engineer, which the Sponsor had agreed to under the offering plan *(see,* § F [II]; § J). That amendment added to without eliminating the open-ended obligation of the Sponsor, existing in the prior versions

of the offering plan, to identify and correct the problem. Nothing in the language of the fifth amendment expressly stated that performance of the enumerated work orders was to be the exclusive remaining obligation of the Sponsor in this regard. Although the Sponsor would have the fifth amendment read, "[s]uch repairs and improvements shall be made only pursuant to the purchase/work orders listed in exhibit F attached hereto", the provision does not include the word "only". From the plain language of the amendment, the Cooperative Corporation's interpretation that the provision was intended to implement the Sponsor's additional promises to perform additional work, without negating the existing obligation to identify and correct the general water seepage problem as specified in the engineer's report in section F (III) of the offering plan, is as plausible as the Sponsor's interpretation that the general obligation was now limited to specified work orders.

Since the language of the fifth amendment is ambiguous, the Cooperative Corporation's extrinsic evidence clearly raised additional issues of fact sufficient to defeat summary dismissal of the first cross claim. Thus, it is not certain that the language now relied upon by the Sponsor was even added at its insistence in negotiations. The intended limitation was not highlighted in the Sponsor's own summary of the "significant provisions" of the fifth amendment filed with the Attorney-General. And thereafter the Sponsor, in writing to plaintiffs, indicated it understood it was obligated to do more than the enumerated work orders and tenants' requested jobs, in exercising its best efforts in seeking to waterproof apartments.

The second cross claim, alleging the Sponsor's unperformed obligation to do work noticed by tenants prior to the closing date, was dismissed on the ground that only the individual tenants had standing to assert it. Since the apartment corporation was a signatory to the offering plan containing the relevant provision, and the Cooperative Corporation and not the tenants is the owner of the building and of the apartments, and since the relevant provision does not clearly limit the right of enforcement to individual tenants themselves, the summary dismissal of this cross claim was also erroneous.

The nisi prius court did not err in its dismissal of the third cross claim for fraud. No cause of action for fraud arises when the only fraud alleged is, in essence, a failure to fulfill promises to perform acts in the future, since failure to fulfill such promises, even where relied upon to the promisee's detriment, is a breach of contract, not fraud (see, Gould v Community

*Health Plan,* 99 AD2d 479, 480). In addition, although there is an issue as to whether the Sponsor's repair obligation with respect to water seepage was limited to completion of work orders or whether the Sponsor was obligated to comply with its agreement to identify and correct the conditions causing the water seepage, there is really no dispute that the Cooperative Corporation had full knowledge of the structural defects in the building and even used this knowledge to negotiate with the Sponsor. Thus, any claim of fraud must fail *(see, 113-14 Owners Corp. v Gertz,* 123 AD2d 850).

The fourth cross claim was properly dismissed since no private right of action lies under the Martin Act *(see, CPC Intl. v McKesson Corp., supra).*

Since we have reinstated the breach of contract cross claims, there is clearly a basis for the fifth cross claim for indemnification of the defendant Cooperative Corporation by the Sponsor for any judgment obtained by the plaintiffs. Even in the absence of the first and second contractual cross claims, the Sponsor concedes the coop has a viable cross claim for contribution against it based upon plaintiffs' negligence claims (as it, itself, asserted against the cooperative). Concur—Sandler, J. P., Sullivan, Asch, Milonas and Rosenberger, JJ.