*214 OPINION OF THE COURT
David B. Saxe, J.
The issues raised here require the court to consider whether any course of action, other than a CPLR article 78 proceeding, is available to a group of nonpurchasing tenants who believe that a cooperative or condominium conversion plan is substantially inaccurate.
The plaintiff tenants’ organization and the individual plaintiffs sue the sponsor of a condominium conversion plan, as well as the Attorney-General, seeking declaratory relief and a permanent injunction against the defendant sponsor’s effectuation of the conversion plan, filed in February 1990. The plaintiff now requests, once again, a preliminary injunction restraining the sponsor from declaring the conversion plan effective. Both the sponsor and the Attorney-General oppose the application, contending that the plaintiff seeks only to stymie the conversion, which must be deemed abandoned if not declared effective by mid-May 1991.
In support of the current motion, the plaintiffs now rely on the assertion that the sponsor is inducing panic buying. However, they fail to provide any evidentiary support for the allegation that the postings are based upon subscribers who may not properly be counted toward effectiveness, nor for the allegation of other illegal conduct by the sponsor. Moreover, the issue is prematurely raised; the Attorney-General must be given the opportunity to review the bona tides of the purported 15% of the tenants who subscribed, before the court considers that claim.
The plaintiffs take the position that an injunction restraining the sponsor from declaring the plan effective until their fraud claims are tried is necessary since this court would be unwilling to alter a fait accompli after the plan is declared effective. For their part, both defendants now contend that no viable fraud claim remains against the sponsor, in view of my dismissal of the plaintiffs’ fourth cause of action, and the holding in CPC Intl. v McKesson Corp. (70 NY2d 268 [1987]).
My previous decision dismissed the plaintiffs’ claim for money damages based upon the fraud alleged, reasoning that as nonpurchasers the plaintiffs could not prove the requisite element of reliance. The prior motion did not raise, and I did not consider, whether the causes of action for injunctive or declaratory relief based upon the same alleged fraud were similiarly affected. However, the sponsor asserts that the only *215 claims that remain relate to the plan itself, and that as such they arise under the Martin Act and may only be addressed via article 78 proceedings.
In CPC Intl. v McKesson Corp. (70 NY2d 268, supra), the purchaser of certain stock complained that the seller and others had defrauded the purchaser by misrepresenting the value of the stock in the offering memorandum. One of the plaintiff purchaser’s causes of action alleged violations of the antifraud provisions of the Martin Act (General Business Law § 352-c). Noting that the Martin Act lacks any express authorization of a private right of action, the court analyzed the Act to determine whether any such intent on the part of the Legislature should be implied, and concluded that "there is no implied private cause of action for violations of the antifraud provisions of the Martin Act” (70 NY2d 268, 275, supra). CPC Inti, concerned a sale of stock covered by section 352-c of the Martin Act, and did not explicitly consider actions alleging fraud in cooperative or condominium conversion plans. However, the First Department has similarly held that neither is there a private right of action under section 352-e, the provision of the Martin Act concerning real estate syndication offering plans (see, East End Owners Corp. v Roc-East End Assocs., 128 AD2d 366, 369-370 [1st Dept 1987]; see also, Horn v 440 E. 57th Co., 151 AD2d 112, 120 [1st Dept 1989]).
In view of these cases, what course of action is available to a tenant group if it perceives fraud, illegality or impropriety in an offering plan which the Attorney-General has accepted for filing?
Of course, the denial of a private right of action under the Martin Act in no way precludes a plaintiff from raising a claim of common-law fraud, alleging actionable wrongs independent of any requirements of the Martin Act, wrongs such as any plaintiff may have raised prior to enactment of the Martin Act (see, Schumann v 250 Tenants Corp., 65 Misc 2d 253, 257 [Sup Ct, NY County 1970]). Indeed, the plaintiffs argue in reply that their remaining causes of action against the sponsor are for common-law fraud. However, the allegations of the complaint and the submissions do not demonstrate the elements of common-law fraud. A review of the complaint reveals that its assertions against the sponsor are largely limited to allegations that false or erroneous information was included in the offering plan by the sponsor regarding the physical condition of the building (roof, ceilings, asbestos conditions, number of extant code violations, etc.) and what *216 can or has been done about them. These are claims of violations of Martin Act § 352-e (1) (b), which require that a plan "not omit any material fact or contain any untrue statement of a material fact.” Moreover, all definitions of common-law fraud of which I am aware include the element of reliance by plaintiff on the misrepresentation to the plaintiffs detriment (see, e.g., Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403, 406-407). A tenant who decides not to subscribe because he believes the information contained in the offering plan is false, cannot be considered to have taken action to his detriment in reliance on the offering plan.
Nonpurchasing tenants have in the past been granted a right of action to claim fraud without regard to the element of reliance. A long line of cases prior to CPC Intl. (supra) held, with respect to condominium and cooperative conversion plans, that while an article 78 proceeding is the appropriate vehicle for a claim of deficiencies in an offering plan, "where there are allegations of actual fraud tenants are entitled to bring a plenary action * * * and the exclusive remedy does not lie with the Attorney-General” (Matter of Greenthal & Co. v Lefkowitz, 32 NY2d 457, 463 [1973]; see also, Apfelberg v East 56th Plaza, 78 AD2d 606, 607 [1st Dept 1980] ["Should the Attorney-General refuse to further investigate and act, postfiling, the tenants (may) still avail themselves of a plenary court action to challenge any fraud, illegality or other impropriety”]; Matter of 160 W. 87th St. Corp. v Lefkowitz, 76 Misc 2d 297, 302 [Sup Ct, NY County 1973] ["If the Attorney-General approves the plan for filing, those who object, claiming fraud or any other valid legal basis which would prevent the plan from coming into operation may come into court in a plenary action and seek an injunction”]). It seems to me that those cases either in effect granted a private cause of action for violations of the Martin Act, or relied upon the court’s equitable powers to enjoin fraudulent conduct.
I am not convinced that CPC Inti. (70 NY2d 268, supra), although precluding actions for damages under the Martin Act, necessarily precludes any application by tenants to invoke the court’s broad equitable powers to order injunctive relief where a plan is permeated with fraud. Indeed, I note that although presented only with an action for damages and therefore having no need to consider the possibility of a private plaintiff seeking an injunction for fraud in an offering plan, the court in CPC Intl. did allude to some distinction in the rules applied depending on the form of relief sought. *217 When embarking upon its analysis the court remarked, "The rules for determining when a violation of a statutory provision gives rise to an implied private cause of action for damages have evolved in the decisional law of this State over more than 100 years” (CPC Intl. v McKesson Corp., 70 NY2d 268, 276, supra; emphasis added). Nor did the court explicitly overrule the line of cases discussed above, permitting actions for injunction by nonpurchasing tenants.
However, to be entitled to a permanent injunction, a plaintiff must demonstrate that it will be irreparably harmed absent the injunction (see, Kane v Walsh, 295 NY 198, 205-206 [1946]). Since the challenged plan is a noneviction plan, I do not see how the tenants will be irreparably harmed if it is declared effective (see, 1045 Park Ave. Tenant Assn. v 1045 Park Ave. Owners Corp., 119 Misc 2d 339, 341 [Sup Ct, NY County 1983]).
In this somewhat unique instance, the plaintiffs characterize the plan as a "veiled eviction plan”. They explain that many units of the building are currently illegal by virtue of the landlord’s previous alterations, such as installation of kitchens and bathrooms in violation of the certificate of occupancy and Building Department regulations. The first amendment to the plan requires the occupants of certain 17th floor apartments, which apartments plaintiffs claim are unique on account of their skylights, to vacate those apartments for a "substantially comparable non-renovated vacant unit” on another floor. This, plaintiffs claim, is the equivalent of eviction. I do not agree. Any necessity to vacate an apartment based upon the purported illegality of the unit will not be remedied by enjoining the conversion; with or without a conversion it remains as an issue between the landlord and the tenant.
The plaintiffs also suggest that they are irreparably harmed by the loss of the right to decide whether or not to purchase their apartments based upon complete and correct information. However, the tenants of a building do not have a right to purchase their apartments pursuant to any plan other than the one prepared by the sponsor. If an offering plan contains misinformation, the sponsor may be given the opportunity to amend the plan to correct the information if it chooses, or may be enjoined from proceeding with the plan. The sponsor may not, however, be required to amend the plan.
Since the plaintiffs have not demonstrated irreparable harm, I agree with the defendants that no viable claim for *218 fraud against the sponsor remains, and accordingly, the perceived need for an expedited trial expressed in my decision and order of December 10, .1990 is no longer applicable.
In answer to the question I posed at the outset, I reluctantly conclude that where nonpurchasing tenants claim fraud in a noneviction conversion plan accepted for filing, the only currently available course of action by which they may challenge the representations contained in the plan is the article 78 proceeding.
I believe this remedy is patently insufficient, particularly since the Attorney-General, although authorized, is not obligated to inquire into the truth, accuracy and fullness of the disclosures made in an offering plan (see, Matter of Whalen v Lefkowitz, 36 NY2d 75; Matter of Gonkjur Assocs. v Abrams, 82 AD2d 683, affd 57 NY2d 853). Moreover, the article 78 remedy involves only limited inquiry by the court into the rationality of the Attorney-General’s actions. But it is an available remedy: if the tenants can demonstrate that the Attorney-General’s determination was arbitrary and capricious, the court has the power to annul that determination (see, CPLR 7806).
However, in the absence of a sufficient basis for a common-law fraud action, without any authority for tenants to enforce the disclosure requirements of the Martin Act, and without a showing that irreparable harm to the tenants can be demonstrated at trial, I conclude that under such circumstances the injunctive relief requested by the tenants cannot be granted.
Accordingly, the motion is denied and the temporary restraining orders vacated.