OPINION OF THE COURT
Jane S. Solomon, J.
*930 In June 1998, construction began on a luxury condominium building at 515 Park Avenue, a project of Messrs. Arthur William Zeckendorf and William Lie Zeckendorf, known to be major real estate developers in New York City. The sponsor of 515 Park Avenue and its selling agent marketed the building as synonymous “with privilege and luxury living,” reminiscent of the residences of “the elite of Manhattan society.” Sales materials described the building’s amenities as “truly unprecedented . . . inspired by the luxuries of another era,” and touted the design elements as out of “a short story by Fitzgerald.” The buyers may wish they had instead read the works of Jerome K. Jerome, who wrote: “I want a house that has got over all its troubles; I don’t want to spend the rest of my life bringing up a young and inexperienced house.” (Jerome K. Jerome, They and I, at 14-15 [1909].)
Problems which arose in the course of construction spawned a number of lawsuits by the board of managers of the completed project and by two residential unit owners against the Zeckendorfs and contractors and construction experts they engaged. Among their other claims, the unit owner plaintiffs claim that they were fraudulently misled into purchasing their units;* that claim is a subject of this motion.
New York has enacted the Martin Act (General Business Law § 352 et seq.), a set of laws designed to regulate the sale of securities, including the sale of condominium units. The Martin Act requires that prospective buyers of condominium apartments receive an offering plan disclosing information about the building. The responsibility for enforcing the Martin Act falls exclusively upon the Attorney General, who is vested with regulatory and remedial powers. To that end, the Attorney General has issued extensive regulations specifying the information that the offering plan and its amendments must contain. Individual purchasers of condominium apartments may not bring their own lawsuits for violations of the Martin Act, even if the violations are egregious. However, they are permitted to sue for common-law fraud. In theory, fraud is conceptually distinct from a Martin Act violation. But in these lawsuits against the Zeckendorfs, it is not.
The issue presented is whether an individual purchaser is barred from pursuing fraud claims against a condominium spon *931 sor, when the alleged fraud mirrors violations of the Martin Act. Specifically, plaintiff Kerusa Co. LLC argues that the Zeckendorfs should have disclosed the building’s ongoing design and construction problems in the offering plan and the amendments which were filed as construction proceeded. The Martin Act and the promulgated regulations do not expressly require this level of disclosure. To permit the fraud claims to go forward in this lawsuit would therefore enlarge disclosure beyond that required under the Martin Act, and intrude upon the purview of the Attorney General. As is more fully discussed in this decision, Kerusa cannot press its claims for fraud, and the branch of the motion before me to amend Kerusa’s complaint to assert fraud is denied.
As recounted in the proposed complaint, construction on 515 Park Avenue began in June 1998, and the minutes of regular construction meetings in January and February 1999 mentioned holes in the concrete back-up walls. Field reports dated February 1, June 1, and June 3, 1999 stated that unfilled holes in the concrete structure of the building needed to be sealed. Minutes of construction meetings in May and June 1999 mentioned groundwater problems and water infiltration at the cellar 2 level and elevator pits. In September 1999, an engineering firm issued a report concluding that there were numerous avenues for groundwater to infiltrate the building, and that no apparent effort had been made to seal and damp-proof the exterior masonry wall and its joints. In 1999 and 2000, leaks attributed to either riser breaks or freezing pipes allegedly caused at least half a million dollars in water damage throughout the building.
Meanwhile, Kerusa executed the $12,999,000 purchase agreement for its penthouse unit on August 24, 1999, and the closing occurred in March 2000. There was a subsequent closing in December 2000 on Kerusa’s purchase of a suite on a low floor, storage units and a wine cellar for an additional $301,000. Kerusa claims that it was unaware of the building’s ongoing construction problems at the closings.
According to Kerusa, its penthouse unit suffered water damage to much of the thermal pipe insulation in the mechanical rooms, while the suite unit was damaged due to a leak from a pipe. Widespread leaks and condensation allegedly resulted in elevated concentrations of stachybotrys and aspergilluspenicillium mold in the air within Kerusa’s units.
In December 2001 and January 2002, the mechanical, electrical, and plumbing engineer during the building’s construction, *932 defendant Jaros, Baum & Bolles (JB&B), and the building’s architect, defendant Frank Williams & Associates, EC. (FWA), made reports and recommendations about the building’s construction defects. On January 22, 2002, the condominium’s board of managers provided to the sponsor and the design and construction engineers a status report of open, uncorrected building and mechanical systems defects and deficiencies. By a letter dated February 22, 2002, the sponsor stated that it would accept responsibility for certain items, would consider others without committing to accept responsibility, and denied responsibility for the rest.
Meanwhile, in April 2002, representatives from JB&B further observed that: the temperature of the fitness center room has higher than normal temperatures in the winter; temperatures in the building’s library space have varied extremely on occasion; holes exist through the elevator pit concrete enclosure, and groundwater enters through these holes during periods of heavy rain or when the water table around the building foundation rises; building occupants complain that apartments are hot during balmy winter days and on very warm days leading up to, or following, the cooling season.
The condominium’s board of managers repeatedly demanded that the sponsor and its design and construction professionals remedy the building’s defects, and they either failed or refused to do so. This lawsuit followed on May 22, 2003, naming 13 defendants and 10 John Doe defendants, some of which were subsequently dismissed from this action. The main characters are:
(1) The “Sponsor defendants”: the sponsor, W10Z/515 Real Estate, L.E (sponsor); the sponsor’s principals, the Zeckendorfs, defendant Daniel Neidich and defendant Stuart Rothenberg; and the sponsor’s general partners, defendants 515/ZGR LLC and W10Z/515 Gen-Ear, LLC, and
(2) the “Construction defendants”: the building’s architect and architectural firm, defendants Frank Edward Williams and Frank Williams & Associates; the construction manager, defendant J.A. Jones-GMO LLC; the structural engineer, defendant Cantor Seinuk Group, EC; and the mechanical, electrical, and plumbing engineer, defendant Jaros, Baum & Bolles.
On October 7, 2004, by a decision on the record, this court granted defendants’ motion to dismiss the first amended complaint with respect to, among other things, the thirteenth and fourteenth causes of action for fraud, because the allegations lacked particularity.
*933 The Proposed New Complaint
As a matter of housekeeping, the proposed amended complaint includes many changes in the existing pleading, which is titled the first amended complaint. Factual allegations are added and some minor errors are corrected. The first five causes of action are unchanged. The sixth and seventh causes of action in the existing complaint, for breach of the implied warranty of good faith and fair dealing and breach of warranty of habitability, are deleted.
The eighth cause of action, for negligence as against the sponsor only, is renumbered as the sixth cause of action and extended to the other sponsor defendants. The ninth through twelfth causes of action, which allege negligence as against nonsponsor defendants, are renumbered in the proposed amended complaint as the seventh through tenth causes of action. A new cause of action for gross negligence as against the sponsor defendants is inserted as the eleventh cause of action. The present thirteenth cause of action, for fraudulent inducement and fraud, is significantly amended and renumbered as the twelfth cause of action. The present fourteenth cause of action, for breach of fiduciary duties, is renumbered as the thirteenth cause of action, and the fifteenth through nineteenth causes of action (which already were dismissed) are deleted. In the discussion below, reference is made to the causes of action as numbered in the proposed new amended complaint.
This motion was made before depositions began. Since then, some depositions have occurred, including depositions by Kerusa witnesses and by William Zeckendorf. Following the Zeckendorf deposition, Kerusa submitted excerpts from his deposition transcript and supporting documents that previously had been exchanged, together with a letter memorandum by counsel dated November 10, 2005.
The sponsor defendants objected to this submission. My court attorney had a conference call with counsel for Kerusa and the sponsor defendants (the only parties appearing on the motion). It was agreed that because the depositions occurred after this motion was submitted, it was sensible to accept the transcript excerpts as evidence in support of Kerusa’s motion to avoid the need for renewal motions. The sponsor defendants submitted additional transcript pages and a letter memorandum in response.
Since Kerusa had the opportunity to submit additional material, and it had a free hand to decide what new material to rely *934 upon, no motion to renew based upon testimony or other evidence obtained on or before November 10, 2005 will be entertained. The additional material submitted by Kerusa pertains only to its proposed fraudulent concealment claim, and Kerusa does not argue that it uncovered evidence to support its proposed negligence claim against Mr. Zeckendorf or any other sponsor defendant.
Discussion
Because Kerusa moves for leave to amend causes of action that were previously dismissed, it must offer sufficient evidentiary grounds to support the proposed amended pleadings (Travelers Ins. Co. v Ferco, Inc., 122 AD2d 718, 719-720 [1st Dept 1986]; CPLR 3211 [e]). The burden of production is similar to that of summary judgment (Pritchard Servs. [NY] v First Winthrop Props., 172 AD2d 394, 395 [1st Dept 1991]). Leave to amend a pleading is freely given as a matter of the court’s discretion, but the court must examine the underlying merit of the proposed amendment (Zaid Theatre Corp. v Sona Realty Co., 18 AD3d 352, 354-355 [1st Dept 2005]) and deny leave where the proposed amendment obviously is without merit (Mobil Oil Corp. v Joshi, 202 AD2d 318 [1st Dept 1994]).
A. Negligence and Gross Negligence
The proposed complaint asserts a new cause of action against the sponsor defendants for gross negligence (eleventh cause of action), and names the sponsor defendants as additional defendants to an existing cause of action for negligence, which previously was only against the sponsor (sixth cause of action).
However, the allegations of the sixth cause of action pertain only to the sponsor, and do not show how the other sponsor defendants might be negligent (see proposed complaint 1i1i 155-158). Therefore, Kerusa is denied leave to amend this cause of action.
As to the proposed eleventh cause of action, for gross negligence against the sponsor defendants, Kerusa agrees not to pursue this claim against Zeckendorf Realty L.E (see reply mem at 5 n 5). The remaining sponsor defendants contend that the Zeckendorfs in their individual capacities did not owe any duty to Kerusa with respect to design, construction or completion of the building, an argument that Kerusa does not substantively contest. As drafted, the proposed eleventh amendment makes reference to the sponsor defendants, including the Messrs. Zeckendorf, but the new factual recitations do not allege acts of negligence by any sponsor defendant.
*935 Reading the amended pleading in a light most favorable to Kerusa, William and Arthur Zeckendorf attended meetings where they learned of problems encountered by the design professionals and construction contractors, and that the building had developed water leaks. None of these are alleged to have been caused by Messrs. Zeckendorf or any other sponsor defendant. The recently submitted transcripts of Mr. Zeckendorf s deposition show that he became aware of water leakage problems and signed change orders to rectify them, and that he authorized payment thereof. The proposed amended complaint does not make out a prima facie case for the amended negligence or gross negligence claims, i.e., there are no allegations of duty of care owed to Kerusa by the sponsor defendants (other than the sponsor itself) that, in its breach, caused the alleged harm.
B. Fraud and Fraudulent Inducement
The proposed complaint alleges that defendants fraudulently concealed construction defects that should have been disclosed in amendments to the condominium offering plan, which were filed months before Kerusa closed on its units. According to Kerusa, the sponsor defendants falsely certified in plan amendments that “there have been no material changes of the facts or circumstances affecting the Property or the offering,” when they allegedly knew of unfilled holes in the concrete structure of the building (see proposed complaint ¶ 185), and leaks and water damage to the building (id. ¶ 186). Kerusa cites a long list of minutes from construction meetings and project change orders to support its allegations that the sponsor defendants were aware of construction problems which it contends should have been disclosed in the Martin Act filings (id. ¶ 77-81, 95).
The sponsor defendants argue that the Martin Act bars this claim because Kerusa is attempting to plead a private right of action under the Martin Act. They also argue that they had no duty to disclose the holes or the leaks, because they were not problems that materially impeded construction of the building.
With respect to allegedly false statements in brochures and advertisements, Kerusa fails to plead the element of falsity with particularity (see proposed complaint ¶¶ 29-35). Some of these statements are sales puffery (see id. ¶¶ 30-32), and Kerusa does not set forth in what manner the remaining statements are false.
As to the alleged fraud of the offering plan amendments, Kerusa has specifically set forth the words, and alleged when and to whom they were made (see proposed complaint ¶¶ 51-57). *936 Kerusa submits field reports, project meeting minutes, and project change orders that may show that the sponsor defendants knew of construction issues such as the unfilled holes and water leaks (see Rearden affirmation, exhibits 6, 8; see also Rearden supplemental affirmation, exhibits 2-40). In additional letter submissions, which include excerpts of the deposition testimony of William Zeckendorf, Kerusa contends that William Zeckendorf knowingly concealed information. If the Martin Act did not exist, the proposed cause of action for fraudulent concealment against the sponsor defendants might well stand.
But Kerusa’s theory of fraud is too intertwined with the disclosure obligations of the Martin Act. Under the Martin Act, “an omission as well as a concealment or suppression of information may be actionable as a fraudulent practice” (State of New York v Rachmani Corp., 71 NY2d 718, 726 [1988]). Kerusa’s claims are “based on the sort of wrong given over to the Attorney-General under the Martin Act” (Whitehall Tenants Corp. v Estate of Olnick, 213 AD2d 200, 200 [1st Dept 1995]). The failure to disclose information in an offering plan is considered as “nothing more than a private cause of action which is prohibited under the Martin Act” (15 E. 11th Apt. Corp. v Elghanayan, 220 AD2d 295, 296 [1st Dept 1995]).
Furthermore, allowing this fraud claim to go forward would have broad policy repercussions on every sponsor of a condominium project. The Martin Act regulations require disclosure of any material defects or needed major repairs to the building (see 13 NYCRR 20.3). But at oral argument, Kerusa maintained that offering plan amendments must also disclose the historical fact that a construction problem occurred, even if the sponsor fixed the problem (July 27, 2005 transcript at 19). The duty of disclosure sought by Kerusa would significantly expand a sponsor’s disclosure obligations and burdens under the Martin Act.
At oral argument, the court voiced doubt over whether an offering plan should disclose the transitory construction problems of a building under construction. In additional briefs on this specific issue, Kerusa cited regulations of the Martin Act to argue that the failure to disclose construction problems constituted material omissions (see 13 NYCRR 20.1 [b]). Kerusa’s reliance on the regulations only underscores that it is pressing an action reserved to the Attorney General under the Martin Act (see Rego Park Gardens Owners v Rego Park Gardens Assoc., 191 AD2d 621, 623 [2d Dept 1993]).
*937 Kerusa does its best to characterize this claim as common-law fraud, which the Martin Act does not bar (CPC Intl. v McKesson Corp., 70 NY2d 268, 285 [1987]). According to Kerusa, its claims are permissible because it does not seek injunctive relief or restitution, which are remedies available to the Attorney General. However, this cosmetic distinction is unavailing. It is well settled that “plaintiffs are not permitted to disguise claims which rightfully belong to the Attorney General as their own” (511 W. 232nd Owners Corp. v Jennifer Realty Co., 285 AD2d 244, 248 [1st Dept 2001], affd on other grounds 98 NY2d 144 [2002]). As mentioned above, Kerusa also stresses in the additional letter submissions that William Zeckendorf intentionally withheld information.
Of course, a line of cases distinguishes fraud from a Martin Act violation based on whether the sponsor allegedly possessed an intent to deceive (see Eagle Tenants Corp. v Fishbein, 182 AD2d 610, 611 [2d Dept 1992], citing Horn v 440 E. 57th Co., 151 AD2d 112, 120 [1st Dept 1989]). The distinction has some appeal because the Attorney General does not need to prove sci-enter to establish a Martin Act violation (Rachmani Corp., 71 NY2d at 725). But this distinction is unworkable on Kerusa’s allegations because the nature of the wrong is based on omissions of legally required disclosures. An intentional omission is no less a violation of the Martin Act than a careless omission, and the Attorney General may prosecute both. As a corollary, a fraud claim that fails to plead scienter is not dismissed because it is an impermissible Martin Act claim; it simply is not fraud.
A distinction should be drawn between fraud based on the omissions of an offering plan, which is not actionable, and fraud based on affirmative misrepresentations of fact, which is not barred. This distinction appears in CPC Inti., where the plaintiff claimed that defendants deliberately and fraudulently prepared false projections of the financial condition of a wholly-owned subsidiary of a defendant. The plaintiff also claimed that defendants intentionally withheld other accurate projections (CPC Intl., 70 NY2d at 274). In permitting the common-law fraud claim to proceed, the Court of Appeals focused on the false financial projections, and not the financial projections that allegedly were omitted. In Vermeer Owners v Guterman (78 NY2d 1114 [1991]), the common-law fraud claim that was not barred under the Martin Act was based on demonstrably false statements in the cooperative offering plan, not omissions.
Kerusa argues that, even if the Martin Act bars this cause of action against the sponsor, it may proceed against the Zecken *938 dorfs individually because, in addition to signing the sponsor certification for business entities, they signed in their individual capacities (see Birnbaum v Yonkers Contr. Co., 272 AD2d 355, 356 [2d Dept 2000]; Zanani v Savad, 228 AD2d 584 [2d Dept 1996]; Residential Bd. of Mgrs. of Zeckendorf Towers v Union Sq.-14th St. Assoc., 190 AD2d 636 [1st Dept 1993]). This argument is unconvincing. Regardless of whether the cause of action is against the sponsor or its principals, the nature of the wrong that falls under the Attorney General’s exclusive jurisdiction remains the same. The cases Kerusa cites, based on misrepresentations of fact rather than omissions, do not address impermissible private efforts to enforce the Martin Act. Therefore, leave to amend with respect to the proposed twelfth cause of action is denied.
C. Other Matters
The sponsor defendants contend that the thirteenth cause of action, against the Zeckendorfs individually for breach of fiduciary duty, is legally insufficient, arguing that the Zeckendorfs owed no fiduciary duty to Kerusa at the time it was a prospective purchaser. This dispute is outside the confines of the motion here. The sponsor defendants may only challenge the merits of a proposed new cause of action, which the alleged breach of fiduciary duty is not. (The court already ruled that this cause of action would be dismissed only as to defendant Charles Irwin [Oct. 7, 2004 transcript at 50].)
Accordingly, it hereby is ordered that plaintiff’s motion for leave to amend the complaint is denied.

 See Board of Mgrs. of 515 Park Ave. Condominium v W10Z/515 Real Estate L.P., Sup Ct, NY County, Solomon, J., Index No. 604629/2002; see also Kramer v Zeckendorf, Sup Ct, NY County, Solomon, J., Index No. 128014/2002 (decided in conjunction herewith).