[906 NE2d 1049, 879 NYS2d 17]

KERUSA CO. LLC, Respondent, v W10Z/515 REAL ESTATE LIMITED PARTNERSHIP et al., Appellants.

Argued February 12, 2009; decided April 2, 2009

## POINTS OF COUNSEL

*Landman Corsi Ballaine & Ford P.C.*, New York City (*William G. Ballaine, James E. Davies* and *Jennifer A. Coughlin* of counsel), for appellants. Plaintiff-respondent's cause of action for common-law fraud is barred because of the Martin Act's statutory scheme and the Attorney General's exclusive authority over enforcement of the offering plan's disclosures. (*Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54; *Vermeer Owners v Guterman*, 78 NY2d 1114; *CPC Intl. v McKesson Corp.*, 70 NY2d 268; *511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 285 AD2d 244, 98 NY2d 144; *State of New York v Metz*, 241 AD2d 192; *People v World Interactive Gaming Corp.*, 185 Misc 2d 852; *State of New York v 7040 Colonial Rd. Assoc. Co.*, 176 Misc 2d 367; *State of New York v First Invs. Corp.*, 156 Misc 2d 209; *State of New York v Manhattan View Dev.*, 191 AD2d 259; *Whitehall Tenants Corp. v Estate of Olnick*, 213 AD2d 200.)

*Gibson, Dunn & Crutcher LLP*, New York City (*Robert L. Weigel, Jennifer H. Rearden, Alison L. Wollin* and *Anne M. Coyle* of counsel), for respondent. I. The Appellate Division's October 2007 order is consistent with settled Court of Appeals precedent. (*CPC Intl. v McKesson Corp.*, 70 NY2d 268; *Vermeer Owners v Guterman*, 78 NY2d 1114; *Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54.) II. The Martin Act is designed to protect consumers, not real estate developers. (*Matter of Badem Bldgs. v Abrams*, 70 NY2d 45; *State of New York v Fine*, 72 NY2d 967; *Matter of Charles H. Greenthal & Co. v Lefkowitz*, 32 NY2d 457; *Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314; *Transit Commn. v Long*

*Is. R.R. Co.*, 253 NY 345; *511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144.) III. The October 2007 order is consistent with the decisions of other departments of the Appellate Division that have considered this issue as well as with those of other courts. (*Residential Bd. of Mgrs. of Zeckendorf Towers v Union Sq.-14th St. Assoc.*, 190 AD2d 636; *17 E. 80th Realty Corp. v 68th Assoc.*, 173 AD2d 245; *1113 8th Ave. Owners Corp. v Rivieccio*, 165 AD2d 714; *Horn v 440 E. 57th Co.*, 151 AD2d 112; *Whitehall Tenants Corp. v Estate of Olnick*, 213 AD2d 200; *Caboara v Babylon Cove Dev., LLC*, 54 AD3d 79; *Keh Hsin Shen v Astoria Fed. Sav. & Loan*, 295 AD2d 319; *Scalp & Blade v Advest, Inc.*, 281 AD2d 882; *Breakwaters Townhomes Assn. of Buffalo v Breakwaters of Buffalo*, 207 AD2d 963; *Marcus v Frome*, 329 F Supp 2d 464.) IV. Kerusa Co. LLC has adequately pleaded a claim for common-law fraud. (*Orbit Holding Corp. v Anthony Hotel Corp.*, 121 AD2d 311; *CPC Intl. v McKesson Corp.*, 70 NY2d 268; *Vermeer Owners v Guterman*, 78 NY2d 1114; *Whitehall Tenants Corp. v Estate of Olnick*, 213 AD2d 200; *Eagle Tenants Corp. v Fishbein*, 182 AD2d 610; *17 E. 80th Realty Corp. v 68th Assoc.*, 173 AD2d 245; *Haberman v Greenspan*, 82 Misc 2d 263; *Junius Constr. Corp. v Cohen*, 257 NY 393; *Tahini Invs. v Bobrowsky*, 99 AD2d 489; *Noved Realty Corp. v A. A. P. Co., Inc.*, 250 App Div 1.) V. Arthur and William Zeckendorf can be held liable for fraud as individuals. (*Birnbaum v Yonkers Contr. Co.*, 272 AD2d 355; *Zanani v Savad*, 217 AD2d 696; *Residential Bd. of Mgrs. of Zeckendorf Towers v Union Sq.-14th St. Assoc.*, 190 AD2d 636.)

*Kramer Levin Naftalis & Frankel LLP,* New York City (*Charlotte Moses Fischman* and *Jay A. Neveloff* of counsel), for Real Estate Board of New York, amicus curiae. The fraud claim is indistinguishable from a Martin Act violation and fails the common-law standard. (*CPC Intl. v McKesson Corp.*, 70 NY2d 268; *Vermeer Owners v Guterman*, 78 NY2d 1114; *Board of Managers of Fairways at N. Hills Condominium v Fairways at N. Hills*, 150 AD2d 32; *Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54; *Rego Park Gardens Owners v Rego Park Gardens Assoc.*, 191 AD2d 621; *Whitehall Tenants Corp. v Estate of Olnick*, 213 AD2d 200; *15 E. 11th Apt. Corp. v Elghanayan*, 220 AD2d 295; *Thompson v Parkchester Apts. Co.*, 249 AD2d 68; *167 Hous. Corp. v 167 Partnership*, 252 AD2d 397; *Thompson v Parkchester Apts. Co.*, 271 AD2d 311.)

## OPINION OF THE COURT

READ, J.

This appeal involves a lawsuit seeking damages for common-law fraud as a result of alleged construction and design defects in a 42-story, 39-unit luxury condominium building located at the corner of Park Avenue and 60th Street in New York City, having 515 Park Avenue as its address. For the reasons that follow, we hold that a purchaser of a condominium apartment may not bring a claim for common-law fraud against the building's sponsor when the fraud is predicated solely on alleged material omissions from the offering plan amendments mandated by the Martin Act (General Business Law art 23-A) and the Attorney General's implementing regulations (13 NYCRR part 20).

I.

On August 24, 1999, plaintiff Kerusa Co. LLC[1] executed a purchase agreement for the penthouse apartment, a suite on a lower floor, two storage units, and a wine cellar in the building at 515 Park Avenue. The purchase price was $13.3 million. The closings on the apartment and the other units took place in March and December 2000 respectively. Kerusa purchased the penthouse unit as raw space—without, for example, drywall, studding and insulation, except at exterior walls; plumbing fixtures and branch piping; appliances; or electrical distribution (electrical service was terminated at the panel box)—and spent $8 million building it out.

On May 22, 2003, Kerusa filed suit against those sponsoring, designing, constructing, marketing and selling units in the building, alleging causes of action for fraud, breach of contract and negligence among others. Kerusa complained generally that various construction and design defects caused significant water damage to the building and led to substantial water leaks, systems failures, widespread condensation and levels of mold posing serious health risks. As a result, Kerusa claimed to have "suffered a substantial, if not total, loss in the value of [its] investment."

After Kerusa filed a first amended complaint, Supreme Court on October 7, 2004 dismissed the cause of action for fraud because the allegations lacked particularity (see CPLR 3013, 3016 [b]; *Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d

---

1. Kerusa, a limited liability company, is a wholly-owned subsidiary of Garuda S.A., which is majority owned by French businessman Francois Pinault.

403, 406-407 [1958]; *Barclay Arms v Barclay Arms Assoc.*, 74 NY2d 644, 646-647 [1989]). Accordingly, on May 13, 2005, Kerusa moved for permission to file a second amended complaint, which asserted a claim against W10Z/515 Real Estate, L.P. (the condominium building sponsor); Arthur W. and William Lie Zeckendorf (two principals of the sponsor); 515/ ZGP, LLC (the sponsor's managing general partner); W10Z/515 Gen-Par, LLC (the sponsor's general manager); and Zeckendorf Realty, L.P. (the sponsor's selling agent) (collectively, the sponsor defendants) for "fraudulent inducement to sign and fraud and fraudulent concealment in connection with purchase agreements and closing of purchase of units."

The purported fraud stemmed from supposedly false and fraudulent representations and material omissions in the sponsor defendants' sales brochures and advertisements; and construction and design defects or problems alleged to have been known to the sponsor defendants but not disclosed in the offering plan amendments filed as construction progressed. On the latter point, while alleging no specific misrepresentations, Kerusa protested that the sponsor repeated in each amendment that "[e]xcept as set forth in this Amendment, there have been no material changes of facts or circumstances affecting the Property or the offering" (*see* 13 NYCRR 20.5 [a] [2]). According to Kerusa, this statement concealed and omitted various construction and design defects and problems encountered during construction but either ignored or inadequately remedied, as evidenced by minutes of weekly meetings to review construction status, field reports and change orders.

Kerusa further alleged that the sponsor defendants knew that "these statements and representations were false" and "omissions . . . were material"; that "[t]hese misrepresentations and omissions" were made and "the defects were concealed" to induce Kerusa to purchase and close on units in the building; and that Kerusa believed the sponsor's "statements and representations to be true and reasonably relied on them in deciding to" make its purchases. It is clear that the complained-of "representations" and "misrepresentations" in the amendments were simply representations that nothing material had been omitted. The allegedly undisclosed and concealed defects included holes in the building's concrete structure; an ongoing "water condition" in the cellars and elevator pits; inadequately insulated pipes that froze; and flooding during construction in November 1999 and January 2000, which caused

water damage in the building. Finally, in the proposed second amended complaint, Kerusa also pleaded a new cause of action against the sponsor defendants for gross negligence.

By order entered December 8, 2005, Supreme Court denied Kerusa's motion. "With respect to allegedly false statements in brochures and advertisements," the court concluded that "Kerusa fail[ed] to plead the element of falsity with particularity" (*Kerusa Co. LLC v W10Z/515 Real Estate, L.P.*, 10 Misc 3d 929, 935 [Sup Ct, NY County 2005]). In addition, "[s]ome of these statements [were] sales puffery . . . and Kersua [did] not set forth in what manner the remaining statements [were] false" (*id.*).

While stating that Kerusa had cured the pleading deficiencies as to the alleged fraud of the offering plan amendments, Supreme Court held that the Martin Act ruled out this claim (*id.* at 935-936). The court reasoned that Kerusa's theory of fraud was "too intertwined with the disclosure obligations of the Martin Act" (*id.* at 936); and, if allowed to go forward, would "enlarge disclosure beyond that required under the Martin Act, and intrude upon the purview of the Attorney General" (*id.* at 931) as well as "significantly expand a sponsor's disclosure obligations and burdens" (*id.* at 936). As for gross negligence, Supreme Court opined that there were "no allegations of [a] duty of care owed to Kerusa by the sponsor defendants (other than the sponsor itself) that, in its breach, caused the alleged harm" (*id.* at 935). Kerusa appealed.

On October 16, 2007, the Appellate Division modified Supreme Court's decision and order so as to permit Kerusa to replead common-law fraud against the sponsor defendants and assert the proposed claim for gross negligence against the sponsor. With respect to Kerusa's cause of action for fraud related to the offering plan amendments,[2] the court stated generally that the Martin Act "does not preclude a private party from prosecuting an otherwise valid common-law fraud claim in connection with the sale of securities whenever the alleged fraudulent conduct is such that the Attorney General would be authorized to bring an action against the defendant under the Martin Act" (*Kramer v W10Z/515 Real Estate Ltd. Partnership*, 44 AD3d

---

2. On appeal, Kerusa did not contest Supreme Court's adverse ruling regarding its proposed fraud claim for allegedly false statements in brochures and advertisements.

457, 458 [1st Dept 2007]).[3] In essence, the Appellate Division seems to have been of the view that a private party may bring an action for fraud grounded solely in alleged omissions from Martin Act disclosures so long as the elements of common-law fraud (a false representation—here, that there were no omissions; in relation to a material fact; scienter; reliance; and injury) are pleaded with particularity. Finally, the court rejected the sponsor defendants' objection that Kerusa had not alleged active concealment as simply "without merit" (*id.* at 460).

While this appeal was pending in the Appellate Division, Supreme Court granted sponsor defendants' motion for summary judgment to dismiss the remaining causes of action in Kerusa's first amended complaint. After the Appellate Division's decision, however, the parties stipulated to reopen the action to allow Kerusa to make its common-law fraud and gross negligence claims against the sponsor defendants.[4]

Meanwhile, the sponsor defendants filed a motion for reargument or, alternatively, for permission to appeal so much of the Appellate Division's order as allowed Kerusa to amend its first amended complaint to replead common-law fraud. On April 24, 2008, the Appellate Division entered an order denying reargument, but granting the motion for leave to appeal and certifying the following question to us: "Was the order of [the Appellate Division], which modified the order of the Supreme Court[,] properly made?"

On April 24, 2008, the Appellate Division also upheld Supreme Court's order dismissing Kerusa's remaining causes of action (*Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership*, 50 AD3d 503 [1st Dept 2008]). The court concluded that Kerusa had not shown any evidence of mold or other damage to its condominium units, or any other injury for which it would be entitled to hold the sponsor defendants liable for breach of contract or negligence (*id.* at 504).

---

**3.** The Kramer lawsuit, initially part of this appeal, was settled in September 2008. In addition, an action brought in 2002 by the building's board of managers against the sponsor defendants and others was settled, after negotiations begun under the aegis of the Attorney General, in January 2006. The board sued on its own behalf and on behalf of individual unit owners in the building. In common with this action, both these lawsuits sought damages for purported design and construction defects at 515 Park Avenue.

**4.** Sponsor defendants have moved in Supreme Court to dismiss the gross negligence claim, and that motion, as of the filing of the briefs in this Court, was still pending.

## II.

The Martin Act authorizes the Attorney General to investigate and enjoin fraudulent practices in the marketing of stocks, bonds and other securities within or from New York State (*see* General Business Law §§ 352, 353). At the time of its enactment in 1921, "no one realized" that the statute would eventually "come to embrace a then-unknown species of investment activity"; namely, "the offer and sale of cooperative apartments ('coops') and condominiums" (*see* Kaufmann, Introduction and Commentary Overview, McKinney's Cons Laws of NY, Book 19, General Business Law art 23-A, at 9). In 1960, however, the Legislature "was asked to choose a legislative approach for the protection of purchasers in offerings of cooperative and condominium units. The choice was incorporated into the state's blue sky law (the Martin Act) and was a disclosure approach—full disclosure of risks and unit purchasers' self-protection by analysis of risks" (Di Lorenzo, *Disclosure as Consumer Protection: Unit Purchasers' Need for Additional Protections*, 73 St John's L Rev 43, 45-46 [1999] [suggesting that New York should enact certain substantive protections to supplement disclosure]; *see also* L 1960, ch 987, codified at General Business Law § 352-e; *Council for Owner Occupied Hous. v Abrams*, 72 NY2d 553, 557 [1988] [section 352-e is "a disclosure statute, designed to protect the public from fraudulent exploitation in the sale of real estate securities"]).

The Martin Act makes it illegal for a person to make or take part in a public offering of securities consisting of participation interests in real estate unless an offering statement is filed with the Attorney General (General Business Law § 352-e [1] [a]); details the numerous items of information that an offering statement must include, and also requires disclosure of "such additional information as the attorney general may prescribe in rules and regulations promulgated under [General Business Law § 352-e (6)] as will afford potential . . . purchasers . . . an adequate basis upon which to found their judgment and shall not omit any material fact or contain any untrue statement of a material fact" (General Business Law § 352-e [1] [b]); directs the Attorney General to issue within a specified time period either a letter stating that the offering statement has been filed or written notification of the deficiencies in it (General Business Law § 352-e [2]); authorizes the Attorney General to adopt rules and regulations to carry out the provisions of section 352-e, "including regulations for the method, contents and filing

procedures with respect to the statements required by [General Business Law § 352-e (1)] and the making of amendments thereto" (General Business Law § 352-e [6] [a]); and makes all filings available for inspection by a purchaser (General Business Law § 352-e [9]).

The disclosure regulations adopted by the Attorney General pursuant to General Business Law § 352-e (6) to cover newly constructed condominiums—such as 515 Park Avenue—fill more than 60 pages in the NYCRR (see 13 NYCRR part 20). They detail the format and content of offering plans and filings, including the word-for-word representation that must be made in the certification to be sworn to by the sponsor and the sponsor's principals in the offering plan (13 NYCRR 20.4 [b]); and the requirements for offering plan amendments, including the direction that "[a]n amendment must include a representation that all material changes of facts or circumstances affecting the property or the offering are included unless the changes were described in prior amendment(s) submitted to but not yet filed with the Department of Law" (13 NYCRR 20.5 [a] [2]).

The Martin Act authorizes the Attorney General to enforce its provisions and implementing regulations (see General Business Law §§ 352, 352-c, 353, 354); he may seek restitution and damages for injured parties (General Business Law § 353; *State of New York v Metz*, 241 AD2d 192, 195 [1st Dept 1998]). Indeed, "[t]he Attorney General bears sole responsibility for implementing and enforcing the Martin Act" (*Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54, 58 [2005]); there is no private right of action under the statute (*CPC Intl. v McKesson Corp.*, 70 NY2d 268, 276-277 [1987]). This serves the Martin Act's purpose, which was

> "to create a statutory mechanism in which the Attorney-General would have broad regulatory and remedial powers to prevent fraudulent securities practices by investigating and intervening at the first indication of possible securities fraud on the public and, thereafter, if appropriate, to commence civil or criminal prosecution; and that consistency of purpose with the statute includes consistency with this enforcement mechanism" (*id.* at 277).

By requiring a broad class of sellers of real estate to make disclosures to buyers, the Martin Act dramatically altered the common-law rule. Prior to enactment of article 23-A,

"New York adhere[d] to the doctrine of caveat emptor and impose[d] no duty on the seller or the seller's agent to disclose any information concerning the premises when the parties deal[t] at arm's length, unless there [was] some conduct on the part of the seller or the seller's agent . . . constitut[ing] active concealment. If however, some conduct (i.e., more than mere silence) on the part of the seller [rose] to the level of active concealment, a seller [might] have a duty to disclose information concerning the property. To maintain a cause of action to recover damages for active concealment, the plaintiff [would have to] show, in effect, that the seller or the seller's agents thwarted the plaintiff's efforts to fulfill . . . responsibilities fixed by the doctrine of caveat emptor" (*Jablonski v Rapalje*, 14 AD3d 484, 485 [2d Dept 2005] [internal quotation marks and citations omitted]; *see also* 37 Am Jur 2d, Fraud and Deceit § 203).

The question on this appeal is whether Kerusa has any common-law claim for fraud, as distinct from a claim under the Martin Act, which only the Attorney General may bring. We conclude that Kerusa has no such claim.

Kerusa alleges in its proposed second amended complaint that the sponsor defendants did not disclose various construction and design defects in the offering plan amendments, and represented therein that there were no "material changes of facts or circumstances affecting the property or the offering" (*see* 13 NYCRR 20.5 [a] [2]) when, in fact, problems arising during construction alerted them to the existence of major defects, which they either ignored or inadequately remedied. But for the Martin Act and the Attorney General's implementing regulations, however, the sponsor defendants did not have to make the disclosures in the amendments. Thus, to accept Kerusa's pleading as valid would invite a backdoor private cause of action to enforce the Martin Act in contradiction to our holding in *CPC Intl.* that no private right to enforce that statute exists. It would, as amicus Real Estate Board of New York points out, "expand the already detailed disclosure requirements of the Martin Act by forcing parties to disclose the normal kinds of problems [encountered] in the course of construction that are described in field reports, project meetings and change orders" in order to avoid transforming every potential latent construction defect

case into a claim for common-law fraud on account of alleged omissions in Martin Act disclosures.

Similarly, Kerusa's claim of fraudulent concealment rests on the theory that the sponsor defendants actively concealed fraud by repeatedly representing in plan amendments that there were no material changes of facts or circumstances, bolstered by the occasional inclusion of only "minor changes" such as "a change in the model of dishwashers installed"—devices which Kerusa says "thwarted . . . efforts to fulfill . . . responsibilities fixed by the doctrine of caveat emptor" (*Jablonski*, 14 AD3d at 485). Again, Kerusa relies on purported omissions from disclosures required by the Martin Act and the Attorney General's implementing regulations—specifically, 13 NYCRR 20.5 (a) (2)—to make out its case. Although Kerusa somewhat deemphasized section 20.5 (a) (2) in its brief in our Court, the proposed second amended complaint at most alleges only that the sponsor defendants tolerated shoddy construction; Kerusa does not contend, for example, that drywall was painted over or taped over to cover up or prevent discovery of water damage; Kerusa does not allege that walls or bricks were put up to hide or prevent it from finding leaking pipes or holes in the foundation. Nothing in the proposed second amended complaint supports active concealment unrelated to alleged omissions from Martin Act disclosures.

Finally, our decisions in *CPC Intl.* and *Vermeer Owners v Guterman* (78 NY2d 1114 [1991]) do not support Kerusa. The lawsuit in *CPC Intl.* arose from McKesson's sale of the stock of its wholly-owned subsidiary, C.F. Mueller Corporation, a leading producer of pasta, to CPC. The "crux" of CPC's complaint was that McKesson, its investment bankers, and certain former McKesson and Mueller employees "deliberately and fraudulently prepared false projections of revenues, operating expenses and profits of Mueller and intentionally withheld other accurate projections for the purpose of selling Mueller for more than it was worth" (*CPC Intl.*, 70 NY2d at 274). We concluded that CPC had sufficiently pleaded common-law fraud because, given its most favorable intendment, the complaint described a scheme to defraud CPC. Unlike this case, *CPC Intl.* did not turn on alleged nondisclosure of information required by the Attorney General's Martin Act regulations. In *Vermeer Owners*, we affirmed the Appellate Division's dismissal of a lawsuit arising out of a real estate syndicate offering. Nothing in our writing suggests that the defendants in *Vermeer Owners* made the

argument advanced by the sponsor defendants in this case. Certainly, we did not address this issue, or need to do so in light of the plaintiff's neglect to prove reliance.

In sum, Kerusa's remaining cause of action for fraud relies entirely on alleged omissions from filings required by the Martin Act and the Attorney General's implementing regulations.[5] That Kerusa alleged the elements of common-law fraud does not transmute a prohibited private cause of action to enforce Martin Act disclosure requirements into an independent common-law tort.

Accordingly, the Appellate Division's order, insofar as appealed from, should be reversed, with costs; that branch of plaintiff's motion that sought to amend the complaint to add a common-law cause of action for fraud should be denied; and the certified question should be answered in the negative.

Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order, insofar as appealed from, reversed, etc.

---

5. As a result, we need not and do not decide whether the alleged misrepresentation of an item of information that the Martin Act or the Attorney General's implementing regulations require to be disclosed would support a cause of action for fraud, so long as the elements of common-law fraud are pleaded.