[991 NE2d 190, 969 NYS2d 416]

LORI SCHLESSINGER et al., Appellants, v VALSPAR CORPORATION, Respondent.

Argued March 19, 2013; decided May 30, 2013

### POINTS OF COUNSEL

*Law Offices of Lawrence Katz*, Cedarhurst (*Lawrence Katz* of counsel), for appellants. I. Plaintiffs may seek to have contractual provisions that run contrary to General Business Law § 395-a declared void as against public policy. (*Charlebois v Weller Assoc.*, 72 NY2d 587; *Caruso v Allnet Communication Servs.*, 242 AD2d 484; *Cimons v Cimons*, 53 AD3d 125; *Matter of Levison v Trinkle*, 70 AD3d 827; *Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100; *Goldman v Simon Prop. Group, Inc.*, 58 AD3d 208; *Llanos v Shell Oil Co.*, 55 AD3d 796; *Young's L&M Constr., Inc. v Kelley*, 13 Misc 3d 307; *Williams v City of Albany*, 271 AD2d 855; *O'Connor v United States Fencing Assn.*, 260 F Supp 2d 545.) II. Plaintiffs may bring suit pursuant to General Business Law § 349 on the theory that defendants deceived them by including a contractual provision that violates General Business Law § 395-a and later enforcing this agreement. (*Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100; *Goshen v Mutual*

*Life Ins. Co. of N.Y.*, 98 NY2d 314; *Riordan v Nationwide Mut. Fire Ins. Co.*, 977 F2d 47; *Farino v Jiffy Lube Intl.*, 298 AD2d 553; *Conboy v AT & T Corp.*, 241 F3d 242; *Broder v Cablevision Sys. Corp.*, 418 F3d 187.)

*Schiff Hardin LLP*, New York City (*David Jacoby* of counsel), and *Schiff Hardin LLP*, Chicago, Illinois (*Paula J. Morency, Aphrodite Kokolis* and *Jeannice D. Williams* of counsel), for respondent. I. The Court should reject plaintiffs' efforts to rewrite General Business Law § 395-a to nullify contract provisions and to provide a private right of action the legislature did not create. (*Benjamin v Koeppel*, 85 NY2d 549; *Cimons v Cimons*, 53 AD3d 125; *Matter of Levison v Trinkle*, 70 AD3d 827; *Caruso v Allnet Communication Servs.*, 242 AD2d 484; *Stinton v Robin's Wood, Inc.*, 45 AD3d 203; *Ahmad v Nassau Health Care Corp.*, 8 AD3d 512; *Sheehy v Big Flats Community Day*, 73 NY2d 629; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32; *Varela v Investors Ins. Holding Corp.*, 81 NY2d 958; *Mark G. v Sabol*, 93 NY2d 710.) II. Plaintiffs cannot state a claim under General Business Law § 349 by asserting that including the full refund provision in the service contract was deceptive. (*Llanos v Shell Oil Co.*, 55 AD3d 796; *Conboy v AT & T Corp.*, 241 F3d 242; *Broder v Cablevision Sys. Corp.*, 418 F3d 187; *Goldman v Simon Prop. Group, Inc.*, 31 AD3d 382; *Farino v Jiffy Lube Intl.*, 298 AD2d 553; *Walts v First Union Mtge. Corp.*, 259 AD2d 322; *Riordan v Nationwide Mut. Fire Ins. Co.*, 977 F2d 47; *Small v Lorillard Tobacco Co.*, 94 NY2d 43; *Andre Strishak & Assoc. v Hewlett Packard Co.*, 300 AD2d 608; *Cozzani v County of Suffolk*, 84 AD3d 1147.) III. Important constitutional considerations weigh against adopting plaintiffs' arguments, which require the Court to rewrite statutes adopted by the legislature. (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471; *Matter of Palmer v Spaulding*, 299 NY 368; *Chase Scientific Research v NIA Group*, 96 NY2d 20; *Desiderio v Ochs*, 100 NY2d 159; *Williams v City of Albany*, 271 AD2d 855; *O'Connor v United States Fencing Assn.*, 260 F Supp 2d 545; *Matter of Notre Dame Leasing v Rosario*, 2 NY3d 459; *Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592.)

**OPINION OF THE COURT**

READ, J.

The United States Court of Appeals for the Second Circuit has asked us to resolve two questions regarding General Business Law § 395-a, which (with certain exceptions) forbids the

termination before expiration of any "maintenance agreement covering parts and/or service" (General Business Law § 395-a [2]). We hold that General Business Law § 395-a does not make contract clauses that contradict its terms null and void; and that violation of section 395-a alone does not give rise to a cause of action under General Business Law § 349.

## I.

Plaintiffs Lori Schlessinger and Brenda Pianko purchased furniture from the Fortunoff Department Store. Each of them also bought from Fortunoff, along with the furniture, the "Guardsman Elite 5 Year Furniture Protection Plan" (the Plan). The Plan is a contract in which defendant Valspar Corporation, through its Guardsman business unit, agreed that, if the furniture became stained or damaged during the contract period, it would "perform one or more" of a number of services— ranging from advice on stain removal to replacement of the furniture—or would arrange a store credit or offer a financial settlement. The Plan contains what plaintiffs call the "store closure provision," which stipulates that

> "[i]f the particular store location where you originally purchased your furniture . . . has closed, no longer carries Guardsman as a supplier, changed ownership, or has stopped selling new furniture since your purchase, Guardsman will give you a refund of the original purchase price of this Protection Plan."

General Business Law § 395-a (2) says that, with exceptions not applicable here, "[n]o maintenance agreement covering parts and/or service shall be terminated at the election of the party providing such parts and/or service during the term of the agreement." Plaintiffs claim, and we assume for present purposes (as did the Second Circuit), that the store closure provision violates section 395-a (2).

Fortunoff went into bankruptcy, and the store where plaintiffs bought their furniture closed. Pianko made a claim under the Plan for unspecified damage to her furniture (a table). Based on the store closure provision, Valspar tendered Pianko a full refund of the payment she made for the Plan ($100 in her case). Schlessinger does not allege that her furniture has been stained or damaged, or that she has made any claim under the Plan.

Plaintiffs brought a diversity action against Valspar in the United States District Court for the Eastern District of New

York in which they asserted two causes of action—one for breach of contract under General Business Law § 395-a and one for damages under General Business Law § 349. Plaintiffs also brought suit on behalf of two putative classes of individuals with New York addresses: those who purchased or will purchase a service contract and those whose claims were resolved by payment of a full refund of the Plan's purchase price from June 1, 2004 until judgment.

Plaintiffs allege that section 395-a renders the store closure provision "ineffective and not a part of the agreement"; consequently, by denying claims based on this provision, Valspar breached its contracts (i.e., the Plan) with plaintiffs. Further, they contend, Valspar engaged in "deceptive practices" as defined by section 349 by selling maintenance agreements containing the store closure provision. Plaintiffs seek a declaration that the store closure provision is not part of the contract; an injunction against its enforcement; an order requiring the reprocessing of all claims denied because of the store closure provision; statutory damages of $50 for each individual who purchased the Plan and has not made a claim worth $50 or more; and attorney's fees, litigation expenses and costs.

The District Court Judge dismissed the complaint (*see Schlessinger v Valspar Corp.*, 817 F Supp 2d 100 [ED NY 2011]). Relying principally on our decision in *Kerusa Co. LLC v W10Z/ 515 Real Estate Ltd. Partnership* (12 NY3d 236 [2009]), he concluded that a breach-of-contract claim may not arise solely as a result of conduct prohibited by General Business Law § 395-a (here, the inclusion of the store closure provision in the Plan); and that a claim under General Business Law § 349 may not be premised solely on violation of General Business Law § 395-a.

Plaintiffs appealed to the Second Circuit, which certified to us the following questions:

> "1. May parties seek to have contractual provisions that run contrary to General Business Law § 395-a declared void as against public policy?

> "2. May plaintiffs bring suit pursuant to § 349 on the theory that defendants deceived them by including a contractual provision that violates § 395-a and later enforcing this agreement?" (*Schlessinger v Valspar Corp.*, 686 F3d 81, 89 [2d Cir 2012]).

We accepted the certified questions (19 NY3d 992 [2012]), which we now answer in the negative.

## II.

The first certified question is based on plaintiffs' cause of action for breach of contract, which, as the Second Circuit interpreted it, is asserted only by Pianko. Valspar concededly acted in conformity with its express contractual obligations, carrying out one of the alternatives permitted under the Plan's service procedures—i.e., it tendered Pianko a full refund of the original purchase price. As a result, Pianko can only succeed on her breach-of-contract claim if General Business Law § 395-a renders the store closure provision null and void, which would remove a refund as an option under the Plan and cast Valspar into breach.

Unlike certain other provisions in the General Business Law, there is no express or implied private right of action to enforce section 395-a. Instead, the legislature chose to assign enforcement exclusively to government officials.* Additionally, the legislature did not include in section 395-a specific language invalidating inconsistent contract provisions, as it did elsewhere in the General Business Law (*see e.g.* General Business Law § 23 [4] [b] [waiver of warranty for vehicles purchased at auction]; *id.* § 198-a [i] [waiver of warranty for a new motor vehicle]; *id.* § 340 [1] [agreements in restraint of trade]; *id.* § 399-c [2] [b] [mandatory arbitration clauses in certain consumer contracts]). We are unwilling to subvert the legislature's choice to leave such enforcement mechanisms out of General Business Law § 395-a by endorsing private actions for breach of contract.

In our view, this case is much like *Kerusa*, which involved a common-law tort claim. In *Kerusa*, we held that the purchaser of a condominium could not sue the building's sponsor for common-law fraud where the purported fraud was predicated solely on alleged material omissions from the offering plan amendments mandated by the Martin Act (General Business Law art 23-A) and the Attorney General's implementing regulations. As in this case, then, the purported claim would not have existed absent provisions in a statute—in *Kerusa*, the Martin Act; here, General Business Law § 395-a. We concluded that "to accept Kerusa's pleading as valid would invite a backdoor

---

* General Business Law § 395-a (4) provides that

"[a] violation of the provisions of this section shall be punishable by a civil penalty of not more than three hundred dollars recoverable in an action by the attorney general . . . or by the corporation counsel for any city or by the appropriate attorney of any other political subdivision."

private cause of action to enforce the Martin Act in contradiction to our holding . . . that no private right to enforce that statute exists" (12 NY3d at 245; *see also City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616 [2009] [city could not bring common-law public nuisance claim predicated on violation of statute—Public Health Law § 1399-*ll*—that did not allow enforcement by the city or otherwise permit enforcement by private right of action]).

## III.

The second certified question arises from the second cause of action in plaintiffs' complaint. That cause of action, unlike the first, asserts a private right of action arising from a statute— not, plaintiffs say, from General Business Law § 395-a, but from General Business Law § 349. Section 349 (a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." And section 349 (h) expressly creates a private right of action:

> "In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

Plaintiffs' theory is, in essence, that Valspar's violation of section 395-a is perforce a violation of section 349 (a) because, by inserting an unlawful provision in the contract, Valspar impliedly represented that this provision was valid and thereby engaged in a deceptive act or practice. We find plaintiffs' reasoning too attenuated to be plausible.

Section 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers (*see Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 344 [1999] [the statute prohibits acts "likely to mislead a reasonable consumer" (internal quotation marks and citations omitted)]). It cannot fairly be understood to mean that everyone who acts unlawfully, and does not admit the transgression, is being "deceptive." Such an interpretation would stretch the statute beyond its natural bounds to cover virtually all misconduct by businesses that deal with consumers. If the legislature had intended this result, it would not have

enacted a statute limited to "[d]eceptive acts or practices" in the first place.

Plaintiffs rely on three Appellate Division cases—*Llanos v Shell Oil Co.* (55 AD3d 796 [2d Dept 2008]), *Lonner v Simon Prop. Group, Inc.* (57 AD3d 100 [2d Dept 2008]) and *Goldman v Simon Prop. Group, Inc.* (58 AD3d 208 [2d Dept 2008])—where the Second Department rejected motions to dismiss section 349 claims by purchasers of prepaid gift cards. The plaintiffs alleged that certain restrictions in the cards had been printed in small type, in violation of General Business Law § 396-i. The distinction between those cases and this one seems clear: Printing contract clauses in small type may tend, in itself, to deceive consumers. Including a termination provision in a maintenance agreement has no such tendency. Thus, assuming *Llanos*, *Lonner* and *Goldman* to be correctly decided, they involved broader deceptive conduct not covered by section 396-i (*see Broder v Cablevision Sys. Corp.*, 418 F3d 187, 200 [2d Cir 2005] [affirming dismissal of a General Business Law § 349 claim where plaintiff did not "make a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under (another state statute)," but rather alleged that a violation of the other statute was, in itself, a section 349 violation]).

Accordingly, the questions certified should be answered in the negative as stated in this opinion.

SMITH, J. (dissenting in part). I agree that General Business Law § 395-a does not create a private right of action, and that for that reason we should answer no to the Second Circuit's second question: Plaintiffs may not create a private right of action by repackaging a section 395-a violation as a violation of General Business Law § 349. However, I would answer yes to the first question, asking whether parties may seek to have provisions that violate the statute declared void as against public policy.

By the plain language of section 395-a (2)—"No maintenance agreement covering parts and/or service shall be terminated at the election of the party providing such parts and/or service during the term of the agreement"—certain termination clauses are made illegal. It is a corollary of the statute that such clauses may not be enforced, and that courts may declare them unenforceable. To permit a suit to obtain such a declaration is not to recognize a "private right of action" under the statute. As the Second Circuit explained in the opinion in which it certified its questions to us: "The usual implied private right of

action case seeks to fashion a tort remedy from the violation of a statutory provision." (*Schlessinger v Valspar Corp.*, 686 F3d 81, 87 [2d Cir 2012].)

The first cause of action in the present complaint is not a tort claim arising out of a statute, but a contract claim arising out of a written agreement. Part of the relief sought on that claim is a declaration that the contract must be enforced without regard to a provision that the legislature has prohibited. If—as all assume for present purposes—the store closure provision has been prohibited by the legislature, the conclusion that it may not be enforced follows.

The Second Circuit, while recognizing the difference between plaintiffs' contract claim and a "private right of action" as usually understood, questioned whether that distinction would be recognized by the New York courts. In the Second Circuit's view, the Appellate Division's decision in *Rhodes v Herz* (84 AD3d 1 [1st Dept 2011]) put the question in doubt (*see Schlessinger*, 686 F3d at 87). I would answer that the distinction between a statutory "private right of action" and a contract claim seeking to declare a prohibited clause to be void is indeed recognized by New York law. This does not necessarily mean that *Rhodes* was incorrectly decided; in that case the plaintiff sought not only a declaration of invalidity, but a refund of all money it had paid under an assertedly illegal contract—thus arguably coming closer than plaintiffs' contract claim in this case does to asserting a claim for damages arising from the statute. However, to the extent that *Rhodes* may be read to suggest that, where a statute does not create a private right of action, a private party may not sue to have an illegal contract declared invalid, that suggestion is simply incorrect.

The majority here makes no mention of *Rhodes* but relies, as did the Federal District Court (*Schlessinger v Valspar Corp.*, 817 F Supp 2d 100, 107-109 [ED NY 2011]), on *Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership* (12 NY3d 236 [2009]). *Kerusa* (a case the Second Circuit opinion does not cite) seems to me wholly unlike this case. In *Kerusa*, we dealt with a complex regulatory scheme designed by the legislature for the protection of purchasers in offerings of cooperative and condominium units. The statute—a section of the Martin Act—required the filing of an offering statement with the Attorney General; prescribed the contents of the offering statement in detail; provided for the Attorney General to review the statement and to require the correction of deficiencies in it; and

authorized the Attorney General to adopt regulations to carry out its provisions (General Business Law § 352-e, described in *Kerusa*, 12 NY3d at 243-244). The Attorney General complied by issuing regulations that "fill more than 60 pages in the NYCRR" (*id.* at 244). We held in substance that the Martin Act's comprehensive scheme, which conferred "broad regulatory and remedial powers" on the Attorney General (12 NY3d at 244, quoting *CPC Intl. v McKesson Corp.*, 70 NY2d 268, 277 [1987]), preempted any common-law fraud cause of action based on the offering statement.

It is a major stretch, it seems to me, to attribute a similar preemptive intention to the legislature that passed the simple provisions of General Business Law § 395-a. That statute says that, with certain exceptions, termination of maintenance agreements at the election of the party providing parts or service is forbidden (General Business Law § 395-a [2]). It also says that a violation of its provisions "shall be punishable by a civil penalty of not more than three hundred dollars recoverable in an action by the attorney general" (General Business Law § 395-a [4]). Under the majority's reading of the statute, the Attorney General's suit for a penalty is an exclusive remedy; in other words, merchants are free to violate the statute as long as the Attorney General does not sue. A merchant may terminate an agreement in the teeth of the statutory words "no maintenance agreement . . . shall be terminated," leaving the consumer without a remedy. I find it impossible to believe that that is what the legislature intended.

Chief Judge LIPPMAN and Judges GRAFFEO, PIGOTT and RIVERA concur; Judge SMITH dissents in part in an opinion; Judge ABDUS-SALAAM taking no part.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in the negative.