The Center for Rheumatology, LLP, AIXA TOLEDO-GARCIA, M.D., and DOROTA HAUSNER-SYPEK, M.D., Plaintiffs,

against
Lee S. Shapiro, M.D., Defendant.


907751-18

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for Plaintiffs
(Peter A. Lauricella and Nicole Haimson, of counsel)
200 Great Oaks Blvd., Suite 228
Albany, New York 12203
Cooper, Erving & Savage LLP
Attorneys for Plaintiff
(David C. Rowley and Brett D. French, of counsel)
39 North Pearl Street, 4th Floor
Albany, New York 12207


Richard M. Platkin, J.

In this commercial dispute arising out of a professional medical partnership, plaintiffs The Center for Rheumatology, LLP, Aixa Toledo-Garcia, M.D., and Dorota Hausner-Sypek, M.D. move: (i) pursuant to CPLR 3211 (a) (1) and (7), for an order dismissing the seven counterclaims alleged in the answer of defendant Lee S. Shapiro, M.D.; or (ii) in the alternative, for an order pursuant to CPLR 3024 (b) striking certain scandalous and prejudicial allegations from defendant's answer. Defendant cross-moves pursuant to CPLR 3211 (a) (7) for dismissal of plaintiffs' first, second and fifth causes of actions.
BACKGROUND
Plaintiff The Center for Rheumatology, LLP ("TCFR" or "Partnership") is a large rheumatology practice in upstate New York (see NYSCEF Doc No. 11 ["Complaint"], ¶ 3). Plaintiff Dr. Toledo-Garcia is the managing partner of TCFR, and plaintiff Dr. Hausner-Sypek is a TCFR partner (see id., ¶¶ 4-7). Defendant, Dr. Shapiro, was a longtime TCFR partner who resigned from the Partnership effective January 1, 2018 (see id., ¶¶ 8-12, 21).
The partners of TCFR executed a written partnership agreement on December 9, 2016 (see NYSCEF Doc No. 31 ["Partnership Agreement" or "Agreement"]). At the time, there were four partners in the practice: the two individual plaintiffs, defendant, and nonparty Neal S. Greenstein, M.D. (see Complaint, ¶ 14).
In mid-2017, Dr. Shapiro announced his intention to retire as a partner of TCFR effective January 1, 2018 (see id., ¶¶ 18, 21). Under the Partnership Agreement, a retiring partner shall sell to TCFR, and TCFR shall purchase, the partnership interest held by the retiring partner (see Agreement, Article XV). 
Section 15.2.1 of the Agreement establishes a process for determining the "redemption price" of a retiring partner's interest. Under this process, the certified public accountants servicing the Partnership shall determine the retiring partner's "Capital Account" balance through application of the same accounting method used for income tax reporting, as adjusted in certain prescribed respects (see Agreement, § 15.2.1). Any amounts owed to the Partnership by the retiring partner shall be offset against this redemption price (see id., § 15.4).
In a letter and report dated November 26, 2018, the certified public accounting firm of UHY Advisors NY, Inc. ("UHY"), which serves as the Partnership's accountant, concluded that Dr. Shapiro owed the Partnership the sum of $286,302 due to a negative capital balance (see NYSCEF Doc No. 13 ["UHY Report"]). On the same date, Dr. Toledo-Garcia sent a letter to Dr. Shapiro demanding that he immediately pay such amount to the Partnership (see NYSCEF Doc No. 14 ["Demand Letter"])
In addition to seeking to collect this negative balance, plaintiffs' Complaint also raises issues concerning the Steffens Scleroderma Center ("Center") operated by TCFR. According to the Complaint, TCFR uses the Center's name and logo to promote, market and offer scleroderma services to patients (see Complaint, ¶¶ 33-35).
Prior to retiring as a partner, Dr. Shapiro allegedly expressed a desire to continue working for TCFR as a non-partner physician and requested that the Partnership prepare a written contract (see id., ¶¶ 41-42). The proposed contact presented to Dr. Shapiro included restrictive covenants [*2]against post-employment competition and solicitation (see id., ¶¶ 43-44). Dr. Shapiro refused to sign the agreement, but continued to see TCFR patients as an employee throughout 2018 (see id., ¶¶ 45-47).
Both while a partner of TCFP and during his non-partnership employment, Dr. Shapiro allegedly engaged in discussions with other health care institutions about relocating the Center and certain of its personnel (see id., ¶¶ 48-56). This included a meeting with Community Care Physicians, P.C. ("CCP") in mid-2018 (see id., ¶ 57). In connection with these efforts, Dr. Shapiro allegedly encouraged TCFR associate physicians and staff to breach their non-competition agreements with the medical practice (see id., ¶¶ 58-61).
On October 10, 2018, after TCFR discovered these activities, Dr. Shapiro announced that his last day of employment would be December 31, 2018 (see id., ¶ 67). He also announced that he would be opening a CCP-affiliated rheumatology practice in Saratoga County in January 2019 (see id., ¶ 68). One of the associate physicians allegedly recruited by Dr. Shapiro, Jessica Chapman, M.D., announced that she would be joining him at CCP (see id., ¶¶ 58-60, 69-70).
Thus, plaintiffs contend that Dr. Shapiro's post-partnership employment with TCFR merely was a ruse to gain access to the Partnership's resources in order to further his own pecuniary interests (see id., ¶ 71).
Finally, plaintiffs allege that, in connection with the opening of the competing practice, Dr. Shapiro made unauthorized copies of TCFR's patient encounter forms (see id., ¶¶ 73-74). Dr. Shapiro also is alleged to have used TCFR letterhead to send unauthorized communications to patients announcing his departure from the practice (see id., ¶ 75). Plaintiffs also take issue with defendant's LinkedIn profile (see id., ¶¶ 77-85).
On the basis of these allegations, plaintiffs allege eight causes of action: (1) breach of the Partnership Agreement; (2) account stated; (3) tortious interference with contract; (4) breach of fiduciary duty and faithless servant; (5) conversion; (6) trademark infringement; (7) unfair business practices, in violation of General Business Law ("GBL") § 349; and (8) tortious interference with TCFR's name and trademark.
In an answer with counterclaims (see NYSCEF Doc. No. 18 ["Answer"]), defendant denies the bulk of plaintiffs' allegations and raises 12 affirmative defenses. The Answer also alleges seven counterclaims, all of which are premised upon the overarching allegation that plaintiffs are engaged in a "conspiracy" to "bully . . . defendant into submission and acceptance of [their] wrongful plan to scapegoat [him] to take the fall for crises facing a fiscally mismanaged medical practice" (id., ¶ 1).[FN1]

The Partnership's "crises" allegedly originated with Dr. Greenstein, the managing partner of TCFR from about 2010 through October 2018, who is said to have "intentionally mismanaged" the Partnership (id., ¶¶ 40-41, 48-49). According to defendant, Dr. Greenstein engaged in financial misconduct to obtain greater distributions from the Partnership than he was entitled to receive under the Partnership Agreement (see id., ¶¶ 50-53).
At about the same time as Dr. Shapiro announced his resignation from the Partnership, Drs. Greenstein and Toledo-Garcia allegedly began implementing a plan for Dr. Toledo-Garcia to take greater control of TCFR and eventually take over as its managing partner (see id., ¶¶ 65-66). Part of this plan was to prevent Dr. Greenstein's fiscal mismanagement from being discovered (see id., ¶ 67), which involved the use of an outside accountant not selected or authorized by the Partnership (see id., ¶¶ 68, 72-74), as well as the assertion of certain biases against defendant (see id., ¶ 69).
After taking over as TCFR's managing partner and becoming more aware of Dr. Greenstein's mismanagement, Dr. Toledo-Garcia allegedly "set into motion a plan to fraudulently alter the books and records of . . . TCFR and the accounting methods used to compute [defendant's] Redemption Price[] and Capital Account[]" (id., ¶ 76). This plan is said to include the assertion of undue influence of UHY (see id., ¶ 77), a "slander campaign" against Dr. Shapiro (id., ¶¶ 78, 81) and an attempt to "hack" into his private email account (id., ¶¶ 103-104).
Based on the these allegations, Dr. Shapiro alleges the following counterclaims: (1) breach of fiduciary duty; (2) "fraudulent inflation of negative capital accounts"; (3) breach of contract; (4) negligence; (5) fraudulent concealment; (6) trespass to chattels; and (7) unfair business practices, in violation of GBL § 349.
LEGAL STANDARD
"Under CPLR 3211 (a) (1), dismissal is warranted if documentary evidence conclusively establishes a defense as a matter of law" (Haire v Bonelli, 57 AD3d 1354, 1356 [3d Dept 2008] [citations omitted]; see Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]). On such a motion, "affidavits submitted by a defendant do not constitute documentary evidence upon which a proponent of dismissal can rely" (Crepin v Fogarty, 59 AD3d 837, 838 [3d Dept 2009]).
On a motion pursuant to CPLR 3211 (a) (7) to dismiss for failure to state a claim, "the Court must afford the pleadings a liberal construction, take the allegations of the complaint as true and provide [the] plaintiff the benefit of every possible inference" (EBC 1, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). The Court's "sole criterion is whether the pleading states a cause of action" (Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001] [internal quotation marks and citation omitted]). As with a motion under CPLR 3211 (a) (1), the Court must "ignore the affidavits submitted by defendants" (Henbest & Morrisey v W.H. Ins. Agency, 259 AD2d 829, 830 [3d Dept 1990]).
PLAINTIFFS' MOTION
Plaintiffs move pursuant to CPLR 3211 (a) (1) and (7) for the dismissal of the seven counterclaims alleged in defendant's Answer.
A. Breach of Fiduciary Duty
The first counterclaim alleges that Drs. Toledo-Garcia and Hausner-Sypek breached fiduciary duties owed to defendant by failing to ensure "that all [TCFR] books and records were accurate and presented to [TCFR's] accountants, UHY, in accurate and proper form" (Answer, ¶¶ 108-109). According to defendant, "[p]laintiffs manipulated the books and records, and the accounting practices used by" UHY in determining his capital account balance and the redemption price of his interest in the Partnership (id., ¶ 111). 
To state a claim for breach of fiduciary duty, a plaintiff must plead: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the [*3]defendant's misconduct" (Rut v Young Adult Inst., Inc., 74 AD3d 776, 777 [2d Dept 2010]). On this motion, plaintiffs challenge only the third element of the cause of action, arguing that the counterclaim fails to specify what monetary damages defendant suffered as a result of the alleged breach. Defendant responds that he was damaged by not being paid for his redemption interest in TCFR and, instead, being sent a bill. 
As plaintiffs observe, defendant's Answer fails to include any articulation of the damages allegedly sustained by reason of the individual plaintiffs' breaches of the duty to provide UHY with accurate financial information concerning the Partnership. In his opposition papers, however, Dr. Shapiro asserts that he sustained monetary damages by reason of TCFR's failure to pay him the value of his interest in the Partnership and the resulting diminution in the value of such interest. Indeed, on November 28, 2018, the Partnership issued a Demand Letter to defendant, calling for him to pay the negative capital balance of $286,302 (see NYSCEF Doc No. 14), and it commenced suit to enforce this demand on December 28, 2018. 
Under the circumstances, the Court is satisfied that defendant sufficiently has alleged damages so as to survive a pre-answer motion to dismiss (see Belair Care Ctr., Inc. v Cool Insuring Agency, Inc., 161 AD3d 1263, 1266 [3d Dept 2018] ["We have previously held that damages became sufficiently ascertainable to cause accrual of a tort cause of action when a former member of a GSIT received a bill demanding payment of amounts due . . . ."]).[FN2]

Based on the foregoing, the branch of the motion seeking dismissal of the first counterclaim is denied.
B. Fraudulent Inflation of Capital Account
The second counterclaim alleges that Drs. Toledo-Garcia and Hausner-Sypek fraudulently inflated the negative balance of the partners' capital accounts as part of a plan to scapegoat defendant for Dr. Greenstein's misconduct (see Answer, ¶¶ 115-118). 
In this regard, defendant alleges that Dr. Toledo-Garcia began consulting with an outside accountant from Puerto Rico, Wanda Rivera-Ortiz, in the spring of 2017 after her initial efforts to manipulate UHY proved unsuccessful (see id., ¶¶ 117-120). The plan was "to fraudulently alter the books and records of . . . TCFR and the accounting methods used to compute Redemption Prices and Capital Accounts" (id., ¶ 122). Defendant alleges that Dr. Toledo-Garcia "further effectuated this plan by asserting undue influence over . . . UHY" (id., ¶ 123). All of this is said to have "caused the negative Redemption Price and negative Capital Account" (id., ¶¶ 123-125).
A cause of action for fraud requires plaintiffs to "'allege a misrepresentation or concealment of a material fact, falsity, scienter by the wrongdoer, justifiable reliance on the deception, and resulting injury'" (Lusins v Cohen, 49 AD3d 1015, 1017 [3d Dept 2008], quoting Zanett Lombardier, Ltd. v Maslow, 29 AD3d 495, 495 [1st Dept 2006]). Further, CPLR 3016 (b) [*4]requires fraud-based claims to be pleaded with particularity, but this requirement is met when the complaint puts the defendant on notice of the incidents complained of, and the material facts alleged in the complaint, in light of the surrounding circumstances, are sufficient to permit a reasonable inference of the alleged misconduct (see Goel v Ramachandran, 111 AD3d 783, 792-793 [2d Dept 2013]).
In challenging the legal sufficiency of the fraud claim, plaintiffs argue that: (1) the Answer fails to particularize where, when and how the alleged financial manipulation occurred; (2) there is no allegation of reasonable reliance by defendant upon the alleged misrepresentation(s); and (3) defendant has not sustained any damages. Plaintiffs further argue that the fraud claim is duplicative of the counterclaims for breach of contract and breach of fiduciary duty.
In opposition, defendant particularizes his claim by citing paragraph 87 of his Answer, which references the Demand Letter. According to defendant, the Demand Letter's representation that the redemption price for his interest in the Partnership was negative $286,302 constituted a fraudulent misrepresentation on the part of plaintiffs.
As plaintiffs observe in reply, however, defendant has failed to allege that he relied in any way on the Demand Letter and its "false statement of the negative capital account" (NYSCEF Doc No. 49 ["Opp. Mem."], p. 18). In fact, defendant alleges that, "[f]or an extended period of time prior to receiving the aforementioned letter, and up through the filing of this lawsuit, [he] has consistently requested" access to the books and records of TCFR to "investigate the accuracy of the alleged Redemption Price and Negative Capital Account" (Answer, ¶ 89).
In the absence of any allegation that defendant relied upon the Demand Letter (and that such reliance was justifiable), the second counterclaim for fraud must be dismissed.
C. Breach of Contract
Defendant's third counterclaim alleges that TCFR breached the Partnership Agreement by (1) failing to accord him the opportunity to "confirm" the redemption price via examination of the Partnership's books and records, and (2) making a premature demand for payment of the negative Capital Account. Plaintiffs seek dismissal of the counterclaim on the ground that it is conclusively defeated by the terms of the Agreement.[FN3]

Pursuant to Section 15.11 of the Agreement, "[t]he closing of the redemption of the Retiring Partner's interest shall occur on a date and time mutually convenient to the Partnership and the Retiring Partner; provided that the closing date shall occur no later than the sixtieth day following the later of: (1) day that the CPA gives notice of the estimated Redemption Price of the Retiring Partner's interest is given . . . , or (2) the effective date of the [retirement]." "On the closing date, the Partnership and the Retiring Partner . . . shall execute such documents . . . as [*5]may be necessary or appropriate to confirm the redemption of the Retiring Partner's interest and the withdrawal of the Retiring Partner as a Partner as of the date of the Retiring Event."
Even assuming that Section 15.11 is controlling with respect to amounts owed by a retiring partner,[FN4]
 defendant has failed to allege a violation of its terms. Defendant retired from the partnership on January 1, 2018, notice of the estimated redemption price was given on November 28, 2018, and this action was commenced on December 28, 2018. Under the plain language of the first sentence of Section 15.11, the closing was to have been held "no later than" January 27, 2019, but, as plaintiffs correctly observe, there is nothing in Section 15.11 that precluded an earlier closing date.
Nor is there anything in Section 15.11 that gives a retiring partner the right to examine the books and records of the Partnership to "confirm" the redemption price. Rather, it is apparent from the plain language of Section 15.11 that its reference to "confirm[ing] the redemption" was intended to refer to the execution of documents and instruments of conveyance needed to give formal approval and effect to the redemption and withdrawal (see
"]). Moreover, it would make no sense for the inspection of books and records envisioned by defendant, and the associated analysis of the Partnership's finances by qualified accountants, to have occurred "[o]n the closing date" (Agreement, § 15.11). 
Based on the foregoing, the counterclaim for breach of contract is dismissed.
D. Remaining Counterclaims
Plaintiffs seek the dismissal of the remaining counterclaims, which allege negligence, fraudulent concealment, trespass to chattels, and violations of GBL § 349 for failure to state a cause of action. 
Defendant acknowledges the pleading standards relied upon by plaintiffs and does not challenge this branch of the motion, except to request that his causes of action for negligence and GBL § 349 be merged into one cause of action under GBL § 349 or that he be given leave to replead an amended GBL § 349 claim (see Opp. Mem, pp. 20-21).
The elements of a cause of action under GBL § 349 are: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act" (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000]). "Section 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers" (Schlessinger v Valspar Corp., 21 NY3d 166, 172 [2013] [citation omitted]). 
At the heart of defendant's proposed GBL § 349 claim is the allegation that plaintiffs failed to inform patients that defendant left the Partnership and relocated to CCP, which is said to be in contravention of the guidelines and advice of the American Medical Association. However, defendant has failed to allege that he was deceived by this practice in any manner, and defendant may not maintain a derivative action on behalf of TCFR's patients (see City of New [*6]York v Smokes-Spirits.Com, Inc., 12 NY3d 616, 622-623 [2009]). 
The Court therefore concludes that defendant has failed to state a claim under GBL § 349 and his proposed "merging" and/or amendments would be futile. Accordingly, the fourth through seventh counterclaims are dismissed
E. Motion to Strike
Plaintiffs move pursuant to CPLR 3024 (b) to strike the allegations that Dr. Toledo-Garcia exhibited bias towards Dr. Shapiro. According to plaintiffs, these allegations are completely irrelevant and unrelated to defendant's counterclaims, which concern the parties' business dealings and their rights and obligations under the Partnership Agreement. Plaintiffs maintain that these false allegations of bias were included solely as an inflammatory tactic intended to harm their reputation and pressure them into settling this case.
Under CPLR 3024 (b), "[a] party may move to strike any scandalous or prejudicial matter unnecessarily inserted in a pleading." "In reviewing a motion pursuant to CPLR 3024 (b), the inquiry is whether the purportedly scandalous or prejudicial allegations are relevant to a cause of action. Matters that are unnecessary to the viability of the cause of action and would cause undue prejudice to the defendants should be stricken from the pleading or bill of particulars" (Irving v Four Seasons Nursing & Rehabilitation Ctr., 121 AD3d 1046, 1048 [2d Dept 2014] [internal quotation marks and citations omitted]).
Defendant's sole remaining counterclaim alleges that the individual plaintiffs breached fiduciary duties owed to him by manipulating the financial records of the Partnership and the accounting practices used by UHY. In the Court's view, the challenged allegations are unnecessary to this cause of action. Regardless of plaintiffs' motivation, the remaining counterclaim will require defendant to establish that the individual plaintiffs manipulated the financial records of the Partnership relied upon by UHY and/or the methods used by the accounting firm to compute defendant's capital account balance and the redemption price for his interest in the Partnership. Defendant will also have to establish that these manipulations caused an unwarranted increase in the capital account balance or an unwarranted decrease in the redemption price. As such, allegations concerning plaintiffs' motive have little, if any, relevance to the counterclaim.[FN5]

Given the lack of relevance of the allegations, together with their highly charged and unduly prejudicial nature (see NYSCEF Doc No. 51), the motion to strike is granted. Defendant is directed to file an amended Answer that removes the following: the words "and discriminate against" in paragraph 1; paragraphs 4-6, 12-18, 21-22 and 34-38; and the words "different religious and ethnic biases, sexual orientation biases, age biases" from paragraph 69. Further, the original Answer (NYSCEF Doc No. 18, 32, 48) shall be sealed.
DEFENDANT'S MOTION
Defendant cross-moves pursuant to CPLR 3211 (a) (7) for the dismissal of plaintiffs' [*7]causes of action alleging breach of contract, account stated and conversion.[FN6]

A. Breach of Contract/Account Stated
Defendant argues that plaintiffs have failed to state a cause of action for breach of contract or account stated because they have not alleged, and cannot demonstrate, that they performed in accordance with the terms of the Partnership Agreement. In particular, defendant argues that plaintiffs have failed to comply with Section 15.11 of the Agreement, which is said to constitute a condition precedent to the Partnership's demand for repayment.
For the reasons stated above, the Court rejects defendant's construction of Section 15.11. Defendant recognizes that Section 15.11 "sets an outer bound to the closing date," but there simply is nothing in its language that makes expiration of the 60-day closing period "a condition precedent to asserting a claim for breach of contract for failure to make payment in violation of the Partnership Agreement" (Opp. Mem., p. 9). Indeed, defendant has failed to identify anything within Section 15.11 that employs the "unmistakable language of condition" (Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 691 [1995]).
However, in light of plaintiffs' concession that Dr. Shapiro promptly disputed the negative redemption price demanded by the Partnership (see NYSCEF Doc No. 50, ¶ 12; Doc No. 54, p. 4), which the Court relies upon in dismissing the fraud counterclaim for lack of reliance (see supra), the claim for account stated cannot be maintained (see Cameron Eng'g & Assoc., LLP v JMS Architect & Planner, P.C., 75 AD3d 488, 489 [2d Dept 2010] ["An essential element of an account stated is an agreement with respect to the amount of the balance due" (citations omitted)]; cf. Harold R. Clune, Inc. v Healthco Med. Supply [Healthco, Inc.], 78 AD2d 914, 914-915 [3d Dept 1980]).
Accordingly,[FN7]
 the branch of defendant's motion seeking dismissal of the causes of action for breach of contract and account stated is granted only to the extent of dismissing the second cause of action for account stated.
B. Conversion
Defendant argues that plaintiffs have not stated a claim for conversion because they have failed to allege that he exercised control over the patient encounter forms to their exclusion.
"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006] [citation omitted]). "The subject matter of a conversion cause of action must constitute identifiable tangible personal property" (C & B Enters. USA, LLC v Koegel, 136 AD3d 957, 958 [*8][2d Dept 2016] [internal quotation marks and citations omitted]; see Roemer & Featherstonhaugh v Featherstonhaugh, 267 AD2d 697, 697 [3d Dept 1999], lv denied 95 NY2d 758 [2000]; see also People v Aleynikov, 31 NY3d 383, 401-402 [2018]).
While the Court is "aware of scattered decisions that suggest that copying of data may constitute conversion," it is difficult to "square these decisions with the New York Court of Appeals' statement . . . that a conversion claim lies where the defendant's exercise of control was 'to the exclusion of the owner's rights'" (Fischkoff v Iovance Biotherapeutics, Inc., 339 F Supp 3d 408, 415 [SD NY 2018] [emphasis added] [collecting authorities], quoting Thyroff v Nationwide Mut. Ins. Co., 8 NY3d 283, 288-289 [2007]). Moreover, as observed in note 3 of Fischkoff, the First Department decision relied upon by plaintiffs merely holds that "[r]etention of copies may be found to be conversion under the circumstances, especially if the originals were missing" (see Comprehensive Community Dev. Corp. v Lehach, 223 AD2d 399, 399 [1st Dept 1996]). Here, plaintiffs do not allege that the original patient encounter forms are missing.
Accordingly, the branch of defendant's motion seeking dismissal of the fifth cause of action, alleging conversion, is granted.
CONCLUSION
Based upon the foregoing,[FN8]
 it is
ORDERED that the branch of plaintiffs' motion brought pursuant to CPLR 3211 (a) is granted to the extent of dismissing the second through seventh counterclaims, and is denied in all other respects; and it is further
ORDERED that the branch of plaintiffs' motion brought pursuant to CPLR 3024 (b) is granted in accordance with the foregoing; and it is further
ORDERED that defendant shall file an amended Answer that removes the following: the words "and discriminate against" in paragraph 1; paragraphs 4-6, 12-18, 21-22 and 34-38 in their entirety; and the words "different religious and ethnic biases, sexual orientation biases, age biases" from paragraph 69; and it is further
ORDERED that the original Answer (NYSCEF Doc Nos. 18, 32, 48) shall be sealed and made available only to the parties to this action and the Court; and it is further
ORDERED that defendant's cross motion is granted to the extent of dismissing plaintiffs' second and fifth causes of action and is denied in all other respects; and finally it is
ORDERED that the parties shall appear for a conference in the Chambers of the undersigned on October 29, 2019 at 9:30 a.m., and clients shall be personally present.
This constitutes the Decision & Order of the Court, the original of which is being transmitted to the Albany County Clerk for electronic filing and entry. Upon such entry, counsel for plaintiffs shall promptly serve notice of entry on defendant's counsel (see Uniform Rules for Trial Cts [22 NYCRR] § 202.5-b [h] [1], [2]).
Dated: September 19, 2019
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 11-15, 18, 28-35, 37-52, 54-55.



Footnotes

Footnote 1: The paragraphs of defendant's Answer pertaining to the counterclaims, which begin on page 26, begin with number one. Thus, unless stated otherwise, references to paragraphs of the Answer shall refer to the numbered paragraphs beginning on page 26. 

Footnote 2: Of course, defendant's obligation to make such payment to the Partnership is the central issue to be determined in this litigation, and the redemption price of Dr. Shapiro's interest must be determined in the manner prescribed by the Partnership Agreement, which is a contract. For this reason, the Court has some reservations about allowing defendant to proceed under a tort theory. Nonetheless, at this early stage of the litigation, the counterclaim should be allowed to go forward.

Footnote 3: Plaintiffs also complain that the cause of action fails to allege damages. However, the law is well settled that "a breach of contract cause of action accrues at the time of the breach . . . though no damage occurs until later" (Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402 [internal quotation marks and citation omitted]). "Since nominal damages are always available in breach of contract actions, all of the elements necessary to maintain a lawsuit and obtain relief in court" are present at the time of an alleged breach (id. [internal quotation marks, citation and brackets omitted]). 

Footnote 4: Plaintiffs maintain that the relevant provision of the Agreement is Section 15.4, which provides that "[a]ny amounts owing to the Partnership, in excess of the amounts owing to such Partner, shall become immediately due and payable upon demand."

Footnote 5: Moreover, defendant's theory that Dr. Toledo-Garcia's biases motivated plaintiffs "to disproportionately pin the financial losses of TCFR on [Dr.] Shapiro" (Opp. Mem., pp. 23-24) appears highly implausible in light of the fact that the method of computation is dictated by the Partnership Agreement, and the same financial books and records used to compute defendant's redemption price would apply equally to any other departing partner. 

Footnote 6: Given that the motion is made pursuant to CPLR 3211 (a) (7), the Court declines to consider the substance of Dr. Shapiro's affidavit, notwithstanding the fact that issue has been joined (cf. Pinnacle Envtl. Sys. v Granger & Sons, 245 AD2d 773, 774 n 2 [3d Dept 1997]).

Footnote 7: Liberally construing the Complaint and giving plaintiffs the benefit of all favorable inferences, the Court is satisfied that TCFR has sufficiently alleged its own contractual performance under the Partnership Agreement and that defendant's complaints concerning the Demand Letter do not provide a basis for the dismissal of the contractual claim.

Footnote 8: The Court has considered the parties' remaining arguments and contentions, but finds them unavailing or unnecessary to determination of the motions.